NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, et al., Plaintiffs,

v.

FOX & COMPANY, et al., Defendants.

No. 83 Civ. 1535 (MJL).

United States District Court, S.D. New York.

May 14, 1984.

Bernstein Litowitz Berger & Grossmann, by Max W. Berger, James L. Kainen, New York City, for plaintiffs.

Parker, Chapin, Flattau & Klimpl, by Alvin M. Stein, Elliot Cohen, Mark D. Offen, Robert M. Carmen, Lawrence R. Gelber, New York City, for defendants Fox & Company, Albert M. DeBiccaci, Morton Berger, Norman E. Klein, Harold B. Westheimer, Harold A. Sedacca and Arthur Rogovin.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

Presently before this Court is plaintiffs' motion for certification of a defendant class consisting of all partners in Fox & Company ("Fox") who were partners between March 21, 1977 and April 15, 1982, inclusive ("the class period").

This case is one of several related cases allegedly arising out of a plan and course of conduct to misrepresent the financial condition of Saxon Securities, Inc., between at least January 1, 1976 and April 15, 1982. Plaintiffs are sixteen banks who allegedly extended over $100,000,000 in loans to Saxon in reliance on Saxon's financial statements, Fox audit reports thereon, and other representations made by defendants with respect to Saxon's financial condition. The defendants include certain officers and directors of Saxon, Fox and five individuals who were partners at Fox during the class period, who are being sued both individually and as representatives of the proposed defendant class.

The complaint alleges that Fox, during the class period, knowingly, recklessly or negligently issued unqualified opinions on Saxon's year-end financial statements, and knowingly, recklessly or negligently misrepresented material facts regarding Saxon's financial condition directly to plaintiffs. The complaint further alleges that each of the individuals who were partners in Fox during the class period "[b]y virtue of their partnership status is personally

jointly and severally liable, along with Fox itself, for the acts of Fox." Comp. ¶ 11.

Plaintiffs have sued the class of Fox partners in addition to Fox itself "in order to assure recovery of the substantial judgment likely to issue if plaintiffs succeed in proving their claims." Memorandum in Support of Plaintiffs' Motion for Class Certification at 4. According to plaintiffs, "it is almost certain that Fox will not be able to satisfy the judgment out of its partnership property or the proceeds of its partnership liability insurance, the only source of recovery against Fox if only Fox itself were sued." *Id.* Unless the individual Fox partners are summoned to this action, New York law will not permit recovery against their personal assets. N.Y. CPLR § 5201 (McKinney 1978). Because of the large number of Fox partners, and what plaintiffs claim to be the virtual identity of issues with respect to Fox, the named partners and the other class members, plaintiffs argue that a defendant class should be certified. Defendants oppose defendant class certification on the grounds that none of the requirements of Rule 23(a) and Rule 23(b)(3) are met.

### DISCUSSION

■ Although defendant class certification occurs relatively infrequently, there is no question but that the procedure is available where all of the requirements of Rule 23 are met.[1] *See In re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Ca.1981); *Lynch Corp. v. MII Liquidating Co.,* 82 F.R.D. 478 (D.S.D.1979); *In re the Gap Stores Securities Litigation,* 79 F.R.D. 283 (N.D.Ca.1978); *In Re Equity Funding Corporation of America Securities Litigation,* M.L.D. No. 142, slip op. at 28–30

(C.D.Ca., March 26, 1976) (*"Equity Funding "*); Note, *Defendant Class Actions,* 91 Harv.L.Rev. 630 (1978). Indeed, on facts virtually identical to those in the present case, the court in *Equity Funding* certified two defendant classes consisting of all individual partners in two accounting firms. *Id.* at 28–30. We find, as did the court in *Equity Funding,* that each of pre-requisites to class certification are met.

### *Numerosity Rule 23(a) Requirements*

■ In light of the fact that the proposed class consists of over 300 persons widely scattered throughout the country, there can be little doubt that the numerosity requirement is satisfied in this case. *See Marcera v. Chinlund,* 595 F.2d 1231, 1238 (2d Cir.), *vacated on other grounds, sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979) (certifying a defendant class of 42 members); *In re Itel Securities Litigation, supra,* (certifying a defendant class of 91 members); *In re the Gap Stores Securities Litigation, supra* (certifying a defendant class of 114 members).

■ As the court in *In re Itel Securities Litigation,* stated:

> The specific requirement that the class be so numerous that joinder of all members is impracticable does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable.

89 F.R.D. at 112.

Joining all Fox partners in this action would be extremely burdensome.[2] Fur-

---

**1.** Rule 23(a) provides that a class action may be brought only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, since plaintiffs herein seek to certify the defendants as a (b)(3) class, they must

show that common questions of law or fact predominate over individual questions and that a class action is superior to other methods for the fair and efficient adjudication of the controversy.

**2.** Indeed, the plaintiffs in related actions in which all Fox partners are sued as individuals, have required repeated time extensions to effect service. Moreover, the Fox partners have not acknowledged mail service and personal service has been necessitated.

thermore, with over 300 defendants, "individual influence over pleading, discovery and litigation strategy" would necessarily be eliminated. *In re Gap Stores Securities Litigation, supra,* 79 F.R.D. at 302. Most likely, the attorneys for Fox would continue to represent the Fox partners as they have thus far. *See* Defendants' Supplemental Memorandum at 4. If not, committees would have to be formed. In either event, joinder would be a mere "fiction for class adjudication."

*Commonality*

Plaintiffs assert that virtually every issue of law or fact relevant to Fox or the named Fox partners, is common to the class by virtue of the fact that all class members are jointly and severally liable for the acts their co-partners performed in the course of partnership business. Defendants respond that traditional principles of partnership liability do not apply in the context of plaintiffs' federal security claims.[3] Thus, argue defendants, plaintiffs will have to prove individual knowledge of or participation in the alleged wrongdoing on the part of each Fox partner. As set forth below, this Court does not agree.

Defendants do not question the widespread application of partnership principles in other areas of the law. New York's statute providing for joint and several liability among partners for torts, including fraud and misrepresentation, committed by co-partners in the ordinary course of part-nership business, is typical of the laws of other states. *See New York Partnership Law* §§ 24, 26 (McKinney 1948); *Halperin v. Edwards and Hanly,* 430 F.Supp. 121 (E.D.N.Y.1977); *Uniform Partnership Act, Sections 13, 15*; 60 AmJur2d *Partnership* §§ 162, 163, 168. Therefore, we are unwilling to find that Congress intended to supplant such principles in the securities context, absent clear evidence to that effect. *See SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 812 (2d Cir.1975).

Defendants argue that the only statutory basis for secondary liability under Rule 10b–5 is found in Section 20(a) of the 1934 Act, which provides for joint and several liability on the part of persons who "control" other persons liable under the Act.[4] Under section 20(a), a controlling person will not be liable if he "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or causes of action." According to the defendants, to impose liability on the individual Fox defendants based solely on their status as partners, would be to circumvent the good faith defense of section 20(a). In addition, defendants argue that imposition of joint and several liability on the Fox partners would be inconsistent with the requirement of scienter in an action under 10b–5.

In our view, defendants' position is inconsistent with cases such as *Marbury Management, Inc. v. Kohn,* 629 F.2d 705,

---

**3.** Although plaintiffs make claims under sections 17(a) and 12(2) as well as under section 10(b) and Rule 10b–5, defendants' arguments against imposition of partnership liability focus primarily on the 10b–5 claims. They do note, however, that the arguments made are equally applicable to the other federal claims. Similarly, the result reached herein applies with equal force to all of plaintiffs' federal claims.

**4.** Section 20(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not direct-ly or indirectly induce the act or acts constituting the violation or cause of action.

Section 15 of the 1933 Act similarly provides for liability on the part of controlling persons: Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

712–715 (2d Cir.1980), which have held that the doctrine of respondeat superior is independent of, and in some cases broader than, liability under section 20(a).[5] According to the Court in *Marbury*, section 20(a) was not intended to supplant common law agency principles; it was "enacted to expand rather than to restrict the scope of liability under the securities laws." *Id.* at 712, *citing SEC v. Management Dynamics, Inc., supra*, 515 F.2d at 812–813. Although the instant case involves partnership liability rather than respondeat superior liability, the reasoning of *Marbury* applies with equal force. Partnership liability, like respondeat superior, is rooted in agency principles; neither doctrine requires actual participation in or knowledge of the acts performed, before liability may be imposed. Both doctrines are almost universally accepted and applied. Therefore, in light of *Marbury*, we hold that section 20(a) was not intended to limit the application of partnership liability in the securities context.

■ The issue of scienter was also dealt with, at least implicitly, in the *Marbury* case. The Court found that although the broker/employer did not act with scienter, and thus could not be held liable as an aider and abettor, it might nevertheless be liable for the acts of its employee on the theory of respondeat superior. *Id.* at 711–712. Implicit in the Court's holding was the recognition that in the context of respondeat superior, it is the agent who must act with the requisite scienter. The conduct of the agent is then imputed to the principal. *See also Kirkland v. E.F. Hutton and Co., Inc., supra*, 564 F.Supp. at 447. Similarly, in the partnership context, the scienter requirement is satisfied as long as the partner or partners actually involved in the wrongdoing, acted with scienter.

We do not agree with defendants that the precedential value of *Marbury* has been seriously undermined by the Supreme Court's decision in *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). In *Aaron*, the Court merely held that scienter is an essential element of a 10b–5 violation in an injunctive action by the SEC, as well as in a private damages action. Thus, an injunction could not be upheld on the basis that Aaron, a management employee at a brokerage firm, acted negligently in supervising two employees engaged in fraudulent conduct. The Court in *Aaron* did not address the issue of liability based on the doctrine of respondeat superior. Moreover, since *Aaron* involved a supervisory employee rather than an employer, application of the doctrine in that case would have raised very different issues. *See Sharp, Coopers & Lybrand, supra*, 649 F.2d at 183. Accordingly, we do not read *Aaron* as precluding the imposition of secondary liability in all cases under 10b–5.

■ In short, defendants have presented no convincing evidence that Congress intended to restrict the imposition of partnership liability under the relevant securities laws. Therefore, we find that the individual Fox partners may be held jointly and severally liable under the securities law, as well as the common law, for any fraudulent acts committed by their co-partners or Fox itself in the course of partnership business. Clearly then, the question as to Fox's or any Fox partner's involvement in the alleged fraud is a question common to the class. The commonality requirement is, therefore, satisfied.

---

5. The majority of courts which have addressed the issue have reached the same result. *See, Henricksen v. Henricksen*, 640 F.2d 880 (7th Cir.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981); *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *Paul F. Newton & Company v. Texas Commerce Bank*, 630 F.2d 1111 (5th Cir.1980); *Holloway v. Howerdd*, 536 F.2d 690 (6th Cir.1976); *Carras v. Burns*, 516 F.2d 251 (4th Cir.1975); *Kerbs v. Fall River Industries, Inc.*, 502 F.2d 731 (10th Cir. 1974); *Kirkland v. E.F. Hutton and Company, Inc.*, 564 F.Supp. 427 (E.D.Mich.1983); *Frankel v. Wyllie & Thornhill, Inc.*, 537 F.Supp. 730 (W.D.Va.1982); *contra, Christoffel v. E.F. Hutton & Company, Inc.*, 588 F.2d 665 (9th Cir.1978); *contra, Myzel v. Fields*, 386 F.2d 718, 737–38 (8th Cir.1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).

*Typicality and Adequacy of Class Representatives*

Plaintiffs argue that because all Fox partners are liable for the fraudulent acts of Fox and all other Fox partners, plaintiffs' claims against the class representatives are necessarily typical of the claims against the entire class. Further, because of the identity of interests between class members and representatives, there is no doubt that the class representatives and their counsel will adequately protect the interests of the class.

In addition to arguing that principles of joint and several liability are inapplicable, defendants maintain that the typicality and adequacy requirements are not met because a very high percentage of the total number of prospective class members were partners for only a portion of the proposed class period, and, therefore, are liable only for the acts of their co-partners committed while they (the class members) belonged to the firm. As a result, defendants argue, the proof for the class members will differ according to the period of time during which each was a partner. Moreover, partners who were not at Fox during the entire class period, will primarily be interested in minimizing their personal liability, and may not adequately represent the interests of partners who belonged to the firm at different times.

Plaintiffs concede that each Fox partner's liability extends only to acts committed while that person was a partner. However, they claim that there is adequate representation since "certain of the class members were partners for the entire class period and therefore have a direct, personal financial stake in opposing all claims based on any act of Fox during the class period." Plaintiffs' Reply Memorandum at 13. At the same time, plaintiffs point out, "certain of the class representatives either became members of Fox during the class period or withdrew therein, assuring vigorous representation of any separate defense that might conceivably be raised on either basis." *Id.*

Defendants reply that the representation is not adequate because "plaintiffs have made no attempt to correlate the time period during which each named representative was a partner of Fox with the tenure of the hundreds of Fox partners and former partners who entered and left the firm at many different times during the class period of more than six years." Defendants' Supplemental Memorandum at 12. For example, defendants contend that since none of the six named representatives withdrew from Fox before September 1, 1978, their interests will differ materially from the interests of those class members who withdrew before the 1977 financial statements were issued, and thus can be held liable only for fraud in the issuance of Saxon's 1976 financial statements.

■ The Court agrees with plaintiffs that the typicality and adequacy requirements are satisfied since the claims against all of the Fox partners rest on the same alleged instances of fraud in Saxon's financial statements. We are satisfied that as long as some of the class representatives were partners at Saxon throughout the entire class period, all class members will be adequately represented. Furthermore, once it is determined which, if any, Saxon reports were fraudulent, it will not be unduly burdensome to determine which class members were partners in the firm at the time the reports were prepared and issued. As plaintiffs suggest, this issue may be amenable to resolution by stipulation, since it should be a matter easily determined by examining Fox's records.

More complex are the issues concerning which plaintiffs were injured by which statements and relatedly, what portion of the total damages sought are attributable to each of the statements found to be fraudulent. At the damages stage, it may become necessary to form sub-classes consisting of partners in Fox during certain key periods, such as each year during which fraudulent statements were issued. However, the Court does not believe that potential differences between members of

the class should preclude class certification at the present time.

*Rule 23(b)(3) Requirements—Predominance*

Defendants contend that individual issues of law and fact will predominate over issues common to the class. Their first argument, that plaintiffs will be required to prove personal involvement on the part of each class member, must be rejected in light of this Court's finding that the Fox partners are subject to joint and several liability in connection with plaintiffs' federal securities claims, as well as plaintiffs' pendent claims. For the same reason, defendants' argument that there will be individual issues as to this Court's *in personam* jurisdiction over the Fox partners is without merit. Section 27 of the 1934 Act and section 22 of the 1933 Act provide for nationwide service of process in all cases brought to enforce any liability or duty created by the Acts. As a result, jurisdiction exists over the Fox defendants with respect to both the federal securities claims and the pendent state law claims. *See Ninth Fed. Sav. & L. v. First Fed. Sav. & L.*, 493 F.Supp. 981, 983 (S.D.N.Y. 1980); *Robinson v. Penn Central Co.*, 484 F.2d 553, 555 (3d Cir.1973). Therefore, the Court cannot anticipate any individual questions arising in connection with the issue of personal jurisdiction.

Defendants' next argument, that the proof applicable to class members will vary greatly depending on the period of time during which each was a partner, must fail for reasons discussed on pages 13–15, *supra*. Individual issues as to when each class member was a partner in the firm and which allegedly fraudulent acts occurred during that period, will certainly not predominate over common issues as to Fox's liability.

Defendants also claim that because the Fox partners are located throughout the United States, conflict of law questions will predominate, particularly with respect to plaintiff's claims of common law fraud. The Court cannot agree. Even assuming that the liability of the individual partners will be governed by the laws of different states, we do not expect there to be significant differences among the states on the issue of partners' joint and several liability or on the elements of common law fraud. *See* discussion, *supra*, at p. 511; *In re Saxon Securities Lit.*, 82 Civ. 3103 (MJL) (Memorandum Opinion and Order of February 23, 1984 at 12). Further, we believe it likely that a single state's law, such as the law of the state where the alleged fraud occurred, will ultimately be applied.

Finally, defendants argue that individual issues will predominate in connection with whether the alleged fraud was committed in the ordinary course of the business of the partnership and whether plaintiffs are entitled to punitive damages.

With respect to the first issue, we find it difficult to believe that there will be a serious question as to whether the audits conducted by Fox were within the scope and business of a public accounting firm. Further, even if such a question does arise, the proof will not vary for those partners held liable by virtue of the acts of their co-partners. Rather, whether or not the allegedly fraudulent acts were within the scope of partnership business, is a question common to all class members.

On the issue of punitive damages, there is a threshold question common to the class: whether joint and several partnership liability applies to punitive as well as compensatory damages. The Court need not resolve this issue at the present time, for even if it is resolved in the negative, individual questions as to damages will not predominate over common questions of liability. *See Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

*Superiority*

Defendants also claim that a class action is not superior to other methods of adjudication for several reasons.

First, they argue that class certification would be futile since each member of the class would almost certainly exercise his or her right to be excluded from the

class.[6] Plaintiffs respond that class members have substantial incentives to remain in this litigation and that there is, therefore, no strong likelihood that most class members will chose to "opt out". The Court agrees with plaintiffs that under the circumstances of this case, the chances of a substantial number of class members choosing to "opt out" are not sufficiently great to justify denial of class certification.

As noted above, the Fox partners have been individually named as defendants and are in the process of being individually served in several closely related cases brought by other banks. The plaintiffs herein have also indicated that they will individually join the Fox partners if class certification is denied. Under these circumstances we believe it unlikely that the majority of Fox partners will choose to opt out of a class action, where they are represented by individuals with interests and potential liabilities identical to their own. *See In re Equity Funding Corporation of America Securities Litigation, supra,* at 30; *In re Gap Stores Securities Litigation, supra,* 79 F.R.D. at 306. As plaintiffs have noted, "insofar as the Fox partners are jointly and severally liable for the acts of their co-partners and Fox, they collectively *minimize* their exposure by remaining in the class and assuming that any judgment against them is also available against the other partners with whom they share responsibility." Plaintiffs' Supplemental Memorandum at 3.

■■■ Defendants also argue that "utilization of the defendant class mechanism is fundamentally *unfair* to named representatives and absent class members where claims of joint and several liability are cou-

pled with demands for punitive or treble damages."[7] Defendants' Memorandum in Opposition at 23. They rely on *Gap Stores, supra,* 79 F.R.D. at 293–95, and *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 234–35 (9th Cir.1974). The Court finds that the rules enunciated in these cases have no applicability in cases other than bilateral class actions.[8] Application of the class action device in this case will not expose the Fox partners to liability beyond that which would exist if they were to be sued individually. Therefore, we do not find that defendant class certification will work an injustice.

Defendants' remaining arguments on the issue of superiority are premised on the assumption that the Fox partners cannot be held jointly and severally liable under the securities law, and must therefore be rejected for the reasons set forth earlier in this Opinion.

*Notice*

Defendants argue that if class certification is granted, the Court should require plaintiffs to pay the costs of notice and designate as class members only those Fox partners who "opt in" to the class. Defendants rely on Magistrate Raby's recommendations in *In Re Investors Funding Corporation of New York Securities Litigation,* 523 F.Supp. 550 (*Bloor v. Dansker,* 76 Civ. 4679) (WCC). After finding an extremely strong likelihood that a substantial number of members of the proposed class would "opt out", Magistrate Raby recommended that plaintiffs' motion for defendant class certification be denied. Alternatively, he recommended that if Judge Con-

---

6. Rule 23(c)(2)(A) provides that in a (b)(3) class action, individual notice must be given to each identifiable class member informing him, among other things, that "the court will exclude him from the class if he so requests by a specified date."

7. Plaintiffs herein seek treble damages in their RICO claim (Compl. pars. 67, 102) and punitive damages in their claims based on common law fraud and negligent misrepresentation. (Compl. pars. 84, 102).

8. The Court in *Gap Stores* summarized the ground rules set forth in a line of 9th Circuit cases "for plaintiff classes attempting to set up defendant class opposition." *Id.* at 295. Although a plaintiff class of Saxon shareholders has been certified in the instant litigation, the plaintiff class has not sued the individual Fox partners either as a class or individually.

We note further that defendants cite no precedent for applying these rules, "unique to the (ninth) circuit," in this Court. *Id.* at 293.

**516**

ner decided to certify the class, the following conditions be imposed:

1. That as a condition of granting such relief, the cost of serving notice of such designation of defendant classes and sub-classes be underwritten by the plaintiff-movant, particularly since the relief sought is obviously intended for the benefit of the plaintiff-movant;

2. That the order of certification further provide that in order to be designated as a member of the class, each prospective member must affirmatively indicate his willingness to be a member thereof;

3. That in the event that less than 25% numerically of the number of prospective class members of any of the proposed defendant classes or sub-classes "opt in" within the time fixed· therefor by this Court in the notice, those who have previously "opted in" with respect to their particular class or sub-class will thereupon be given the opportunity to "opt out".

See pp. 9–10 of Magistrate's Report No. 16, dated February 26, 1979.

Defendants ask that the conditions recommended by Magistrate Raby should be imposed in this case and suggests that not to impose such conditions could result in a deprivation of the defendants' due process rights.

 Plaintiffs respond that as long as this Court has personal jurisdiction over the Fox partners pursuant to the Securities Acts, and as long as the class members are adequately represented and receive notice of their right to "opt out" of the class, the requirements of procedural due process are satisfied. This Court agrees. Furthermore, plaintiffs have agreed to underwrite the cost of notice.

Plaintiffs request that the notice sent to class members provide that unless "opt outs" are submitted in good faith for the purpose of appearing individually through separately retained counsel, the Court will consider them as bad faith evasion of the process of this Court. Plaintiffs argue:

It would be a travesty if plaintiffs were first required to serve each Fox partner by mail and subsequently required to serve them personally (in the event they choose to opt out of the class) where the end result, collective representation by Fox's attorneys,· is virtually a foregone conclusion, and where the issues common to the Fox partners were meanwhile being litigated.

Plaintiffs' Supplemental Memorandum at 10. Defendants respond that they have a right to opt out, which they should be free to exercise without being threatened with adverse consequences. The Court fully agrees with defendants that the Fox partners' absolute right to "opt out" should not be burdened with difficult considerations, simply because it is in the plaintiffs' best interests to have all partners included in the class. Accordingly, plaintiffs' request for special notice will not be granted.

### CONCLUSION

In conclusion, the Court finds that each of the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied in this case, and a defendant class should therefore be certified. Plaintiffs will underwrite the costs of notice.

It Is So Ordered.