See also, D.C., 669 F.Supp. 163.

ALEXANDER GRANT &
COMPANY, Plaintiff,

v.

Robert B. McALISTER, et al.,
Defendants.

and

Connie J. HARRIS, Defendant/Third
Party Plaintiff,

v.

Jose L. GOMEZ, et al.,
Third-Party Defendants.

Grant THORNTON,
Third-Party Plaintiff,

v.

Marvin L. WARNER, Sr., et al.,
Third-Party Defendants.

Civ. A. No. 1–85–1068.

United States District Court,
S.D. Ohio, W.D.

July 30, 1987.

Stanley Goodman, Goodman & Goodman, Cincinnati, Ohio, for third-party defendant Marvin L. Warner, Jr.

Gerald L. Draper, Bricker & Eckler, Columbus, Ohio, for third-party defendant Marvin L. Warner, Sr.

Suzanne Richards, Vorys Sater Seymour and Pease, Columbus, Ohio, for third-party defendant, Ohio Deposit Guarantee Fund, Donald R. Hunscher, and Charles Mayleben.

Leonard S. Meranus, Paxton & Seasongood, Cincinnati, Ohio, for plaintiff/counter-defendant/third-party plaintiff Alexander Grant & Co., and counter-defendant/third-party plaintiff William Swisshelm.

Armistead W. Gilliam, Jr., Smith & Schnacke, Dayton, Ohio, for third-party defendant Burton M. Bongard.

James E. Pohlman, Porter Wright Morris & Arthur, Columbus, Ohio, for defendant/counter-plaintiff Connie J. Harris.

Roger J. Makley, Collidge Wall Wolmsley & Lombard Co., Dayton, Ohio, for third-party defendant David J. Schiebel.

Robert Pitcairn, Katz Teller & Hild Co., L.P.A., Cincinnati, Ohio, for third-party defendant Nelson Schwab, Jr.

Patrick J. Cronin, Spraul Reyering Cissell & Cronin, Cincinnati, Ohio, for third-party defendant Robert J. Weeder.

James M. Moore, Lindhorst & Dreidame, Cincinnati, Ohio, for third-party defendants Robert Braun and Stanton Brock.

Norman I. Barron, Brumleve DeKamp Wood & Barron, Cincinnati, Ohio, for third-party defendant Arthur C. Elliott.

Arnold Morelli, Bauer Morelli & Heyd Co., Cincinnati, Ohio, for third-party defendant Gehl P. Babinec.

R. Guy Taft, Steer Strauss White & Tobias, Cincinnati, Ohio, for third-party defendant Marlin B. Arky, Personel Representative of the Estate of Stephen Arky.

James R. Adams, Frost & Jacobs, Cincinnati, Ohio, for third-party defendant Arthur Andersen & Co.

John P. Kiely, Rendings Fry Kiely & Dennis, Cincinnati, Ohio, for third-party defendant Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A.

Mitchell B. Goldberg, Strauss & Troy, Cincinnati, Ohio, for third-party defendants Fidata Trust Co., Fidata Corp., Fidata Securities Management, Inc., and Bradford Securities Operations, Inc.

Jose Gomez, counter-defendant, Tallahassee, Fla., pro se.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on defendant and counter-plaintiff's, the Superintendent of the Ohio Division of Savings and Loan Associations (Harris), motion to certify counter-defendant class pursuant to Fed.R.Civ.P. 23. The parties having fully briefed the issues, the court will rule on this motion without conducting oral argument. *See* Local Rule 4.0.4.

On June 7, 1985, plaintiff Alexander Grant & Company (Grant), filed this action against Harris' predecessor, Robert McAlister, and on October 20, 1986, Harris answered the complaint. Along with that answer, Harris filed a counterclaim against Grant, and added as additional counter-defendants a class consisting of all persons who were partners in Grant between January 26, 1979, and March 4, 1985, represented by Harris to be over 300 members living throughout the United States. These dates are significant because January 26, 1979, is the date of the first Grant audit alleged to be false, and March 4, 1985, is the date of the collapse of ESM. Harris now seeks to certify this class under either Rule 23(b)(1) or 23(b)(3), and have William Swisshelm, a partner at the Grant Cincinnati office, appointed as the class representative.

*Discussion*

■ Harris seeks certification pursuant to Rule 23, which authorizes defendant class actions as well as plaintiff class actions. *In re Itel Securities Litigation,* 89 F.R.D. 104, 108 (N.D.Cal.1981); *In re Consumers Power Company Securities Litigation,* 105 F.R.D. 583, 611 (E.D.Mich. 1985); *In re Alexander Grant & Company Litigation,* 110 F.R.D. 528, 533 (S.D. Fla.1986). Rule 23(a) contains four prerequisites that must be satisfied for a lawsuit to proceed as a class action. The rule provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The burden of showing the satisfaction of all four of the prerequisites of Rule 23(a) falls on the party seeking to utilize the class action device. *See Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150

(1976); *Consumers Power*, 105 F.R.D. at 600.

In addition to the requirements of Rule 23(a), Harris must demonstrate that this case falls within the guidelines of Rule 23(b). That rule provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

It must always be remembered that the district court has broad discretion in deter-mining whether an action should be certified under Rule 23. *Cross v. National Trust Life Insurance Co.*, 553 F.2d 1026, 1029 (6th Cir.1977); Wright, Miller, and Kane, *Federal Practice & Procedure* § 1759, at 111 (1986).

I. *Rule 23(a)*

A. Rule 23(a)(1): Numerosity

■ Harris argues that given the size and geographic dispersity of the proposed class, a great burden would be imposed upon her if she had to serve each class member individually, and given the size of the class, no one member can individually influence the course of this litigation anyway. As a result, Harris contends that joining all class members is impracticable. Swisshelm responds that Harris has had to join each class member in Home State related civil cases ongoing in the state of Ohio, and because Harris has done so it cannot be said that joinder is impracticable.

As stated in Rule 23(a)(1), the key consideration to this requirement is impracticability of joinder, and this is determined based on the particular circumstances of the case. *Roundtree v. Cincinnati Bell, Inc.*, 90 F.R.D. 7, 8 (S.D.Ohio 1979); *Consumers Power*, 105 F.R.D. at 611. One such circumstance is if the size of the class is so large that individual influence over pleading, discovery, and litigation strategy is effectively eliminated. *In re Gap Stores Securities Litigation*, 79 F.R.D. 283, 302 (N.D.Cal.1978); *Consumers Power*, 105 F.R.D. at 611. Another such circumstance is if joinder would result in a burden to the case, be it the cost to the plaintiff of serving each defendant, or the taxation of court resources due to numerous motions filed by several hundred defendants. *Northwestern National Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507, 510 (S.D.N.Y.1984); *Consumers Power*, 105 F.R.D. at 611–612; *Grant*, 110 F.R.D. at 534. In this context, it should be stressed that joinder need not be impossible, but rather impracticable. *Itel*, 89 F.R.D. at 112.

An analysis of the relevant circumstances demonstrates that the numerosity re-

quirement is satisfied by Harris. There certainly can be no individual influence over litigation involving over 300 counter-defendants spread throughout the nation, a conclusion reached by Judge Gonzalez of the United States District Court for the Southern District of Florida when presented with a motion to certify a class very similar to the one at issue here. *See Grant*, 110 F.R.D. at 534. Moreover, given past experience in other courts attempting to join individual Grant partners, a significant burden will be imposed on both Harris and the court if the joinder of individual partners is attempted. As Judge Gonzalez observed in *Grant:*

> The court feels compelled to comment on the problems of plaintiffs, not parties to the Motions for Certification of Defendant Class, in effectuating service of process upon the individual partners. These plaintiffs initially attempted mail service pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. For example, in the Receiver's Action, service by mail was attempted upon 470 Grant defendants. Only four (4) acknowledgments were completed and returned while six (6) mailings were returned as undeliverable. Approximately ten (10) other defendants were served personally, and their service was unsuccessfully contested by Grant. In the remaining cases, although approximately 300 Grant partners were sued, personal service has been effected upon only one-third of these individuals.
>
> These plaintiffs have been frustrated by their inability to obtain personal service and have incurred substantial expenses in their futile attempts. The Receiver, in fact, sought this court's assistance by filing his Motion for Determination as to Mail Service. By separate Order, however, this court determined that absent the return and filing of the defendants' acknowledgments, mail service is insufficient. Thus, plaintiffs seeking to recover against individual Grant

partners will be required to effect personal service upon these Grant partners.

> The court, therefore, notes that although trial is scheduled to commence in six (6) months, only one-third of the potential defendants have been served properly.

110 F.R.D. at 532.[1] Swisshelm's argument that past experience demonstrates that joinder is not impracticable is unconvincing in light of the above, and leads to the conclusion that he is really arguing that joinder is not impossible. This may be true, but it does not detract from the conclusion that joinder will severely burden all involved with this case, and as such is not a reasonable mechanism to use here.

### B. Rule 23(a)(2): Commonality

■ Harris argues that all class members are alleged to be jointly and severally liable for the alleged misconduct of Jose Gomez and other Grant employees due to the operation of partnership law, therefore the theory of liability against them is common to all. Swisshelm responds that the question of partnership liability is for the jury to decide, therefore it cannot be said with certainty that all class members will be liable based on the same theory of liability, and as a result there is no commonality.

To satisfy Rule 23(a)(2), the claims against all class members need not be identical, but rather there must be a single issue which is common to all class members. *Consumers Power*, 105 F.R.D. at 612; *Grant*, 110 F.R.D. at 534. Here, the primary theory of liability is common to all Grant partners, being that by operation of partnership law they are all liable for the acts of Jose Gomez and others. Swisshelm assumes that this liability must be established for there to be commonality, but at this point it is sufficient that this liability is being asserted. Consequently, because questions of liability are common to all class members, this requirement has been satisfied.

---

**1.** Judge Gonzalez also noted that numerous individual service of process issues in his case have consumed a great deal of court time. *Grant*, 110 F.R.D. at 534.

## C. Rule 23(a)(3): Typicality

██ Harris contends that because the claims against Swisshelm and the rest of the class are identical, the defenses raised against these claims, specifically that individual partners are not responsible for the acts of other partners in this particular case, will also be identical, and as a result this requirement will be satisfied. Swisshelm responds that his defenses may not be typical of the class, as some class members were more directly involved with ESM than he was, and given that some partners have differing tenures as partners than he does, some will have greater exposure to liability than others.

Rule 23(a)(3) will be satisfied if the defenses raised by Swisshelm are typical of those raised by the entire class. *Consumers Power*, 105 F.R.D. at 602. The defenses raised by the class representative need not be identical to those raised by other class members, and it is only when there is a unique defense forwarded by the representative which will consume the merits of the case that a court should refuse to certify a class based on a lack of typicality. *Thillens, Inc. v. Community Currency Exchange Association of Illinois*, 97 F.R.D. 668, 678 (N.D.Ill.1983). *See also Senter*, 532 F.2d at 525, n. 31.

The court is of the belief that the defenses Swisshelm will raise are typical of those of the class. Swisshelm has been a partner with Grant since 1974, and is still a partner at this time. He is therefore subject to full exposure for the alleged Grant fraud, as his tenure includes the entire class period. It is fair to assume he will raise all defenses available to other class members. Participation in the ESM audits is irrelevant to the liability issue, as either the Grant partners are liable for fellow partners' torts given the particular facts by operation of general partnership law or they are not. As to the tenures of individual partners, all this argument does is to possibly justify dividing the proposed class into subclasses, *see Northwestern National Bank*, 102 F.R.D. at 513; *Grant*, 110 F.R.D. at 535, and the court may do so, as is discussed further below. Accordingly, Rule 23(a)(3) has been satisfied.

## D. Rule 23(a)(4): Fair and Adequate Representation

Harris argues that Swisshelm, as an active Grant partner with possible liability exposure extending throughout the class period, has a great incentive to defend his and the class' interests to the fullest extent possible. Harris also points out that the counsel which will represent Swisshelm and the class, the same that filed his opposition to the instant motion, is the same that has represented Grant throughout all the Ohio Home State cases, therefore there is no fear that the class will be poorly represented in court. Swisshelm again responds that given that there are different partnership tenures at issue, and some partners were involved with ESM while others were not, Swisshelm may not end up defending the interests of some class members as well as others in similar situations to him.

██ This final requirement of Rule 23(a) must be examined very carefully in a defendant class action context, as the court must make sure that the interests of the entire class are properly safeguarded. *In re Arthur Treacher's Franchise Litigation*, 93 F.R.D. 590, 597 (E.D.Pa.1982); *Consumers Power*, 105 F.R.D. at 613. This requirement is usually examined in the context of a two-step test: first, the representative must have common interests with the other class members; second, it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525; *Jackshaw Pontiac v. Cleveland Press Publishing Co.*, 102 F.R.D. 183, 191 (N.D.Ohio 1984). As to this second step, the question of whether the class representative will present defenses antagonistic to the class comes into play. *Thillens*, 97 F.R.D. at 679.

There are typically three factors that make up the common interest determination in the first step: is the representative a class member, does the representative have a stake in the outcome, and is the

representative familiar with the facts and conditions to be challenged on behalf of the class? *Bowen v. General Motors,* 542 F.Supp. 94, 99 (N.D.Ohio 1981), *aff'd,* 685 F.2d 160 (6th Cir.1982); *Jackshaw,* 102 F.R.D. at 191. Here, Swisshelm is a member of the class. Due to possible joint and several liability under partnership law, he has a stake in the outcome of this litigation, and there is no doubt that he is familiar with the relevant facts and circumstances at issue. As discussed above, he has defenses typical of the class, and the major theory of liability facing him is the same for all class members.

■ As to the second step, antagonistic defenses will bar class certification only if they go to the subject matter of the litigation. *Thillens,* 97 F.R.D. at 680. There is no indication here that any key defenses antagonistic to the class will be raised by Swisshelm, and the court cannot foresee any arising. Moreover, in *Northwestern National Bank* the court heard the exact same argument being made as to differing partnership tenures surrounding a proposed defendant class, but concluded that if the class representative was a partner throughout the entire class period, no problems would arise that warranted the denial of certification. *Northwestern National Bank,* 102 F.R.D. at 513. Because Swisshelm was a partner throughout the entire class period, *Northwestern National Bank* applies here as well, and its reasoning is sound. Finally, it is not disputed that the class counsel will be the same firm that represents Grant in this case, therefore there is no problem as to adequate legal representation, as that firm is very familiar with the facts of this case and has acted competently.

However, given the extreme importance this requirement has in a defendant class context, and given that the court feels it may be desirable to subdivide the class as is discussed below, the court will deem Swisshelm a fair and adequate counter-defendant class representative only on a provisional basis.

## II. *Rule 23(b)*

The question raised in this part of this memorandum opinion and order relates to the question of under which, if any, type of class actions this class could be appropriately certified.

### A. Rule 23(b)(1)(A)

■ Harris argues that certification under Rule 23(b)(1)(A) is appropriate because if each partner was sued separately, some could be found liable while others could not, and this inconsistency is what Rule 23(b)(1)(A) seeks to avoid. Swisshelm responds that this is all conjecture, as there is no guarantee that there will be inconsistent results, and if different results are reached it may not be due to inconsistency, but rather due to the fact that the Grant partners are situated differently as to tenure as partners and involvement with ESM.

To satisfy the requirements of Rule 23(b)(1)(A), there must be more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are held instead of one class action. *In re Bendectin Products Liability Litigation,* 749 F.2d 300, 305 (6th Cir.1984); *McDonnell Douglas Corp. v. U.S. District Court,* 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Grant,* 110 F.R.D. at 537. What is required is well-described in *Employers Insurance of Wausau v. FDIC,* 112 F.R.D. 52, 54 (E.D.Tenn.1986):

The advisory committee notes make it clear that the situation in which a party is faced with inconsistent results requiring it to pay some class members but not others is covered by Rule 23(b)(3) not Rule 23(b)(1). *See* Advisory Committee Note of 1966 to Rule 23(b)(3). The risk of "incompatible standards of conduct" which Rule 23(b)(1)(A) was designed to protect against involves situations where the non-class party does not know, because of inconsistent adjudications, whether or not it is legally permissible for it to pursue a certain course of conduct. Thus, Rule 23(b)(1)(A) is designed

to protect against the nonclass party's being placed in a stalemated or conflicted position and is applicable only to actions in which there is not only a risk of inconsistent adjudications but also where the nonclass party could be sued for *different and incompatible affirmative relief.*

(Emphasis in original) (footnote omitted).

A reading of Harris' arguments made in support of Rule 23(b)(1)(A) certification leads to the conclusion that certification under this provision is not appropriate. Harris is claiming that if there were separate suits, she might win on some and lose on others, even though the legal and factual issues involved are identical. At no point does she argue that anything more might result, and in light of the above law, without more more might result, and in light of the above law, without more there can be no certification under this provision. This is not like the situation of the validity of a single bond issue, allegedly invalid because of improper authority to issue the bonds, the typical Rule 23(b)(1)(A) type class.

B. Rule 23(b)(1)(B)

■ Harris argues that if the class claims were tried in many separate suits, the first determination would practically dispose of the later ones, as earlier liability determinations could be used against individual partners in later cases. In addition, Harris contends that given there is a common insurance fund covering all the partners, and that this fund has a cap on it, the partners who have their cases tried first can have their litigation costs and judgments covered by the insurance fund, while later partners would not be covered by the fund and would have to satisfy any judgment out of their own pockets. Swisshelm responds that if a given partner is that concerned, they can always intervene in the earlier suit.

Rule 23(b)(1)(B) is designed not only for those situations where a judgment in a nonclass action against a class member will practically, if not technically, conclude oth-

er matters against other class members. *Itel,* 89 F.R.D. at 125; *In re Greenman Securities Litigation,* 94 F.R.D. 273, 277 (S.D.Fla.1982); *Grant,* 110 F.R.D. at 537. It is also designed to protect those class members in which separate actions against them would impede their ability to protect their interest. The presence of an inadequate fund to fully protect all those who may ultimately be held liable, and the possible additional liability of some members of the class, is sufficient to permit the class to be held to be a Rule 23(b)(1)(B) type class.

C. Rule 23(b)(3)

■ Harris contends that the question of partnership liability and the alleged torts of fellow partners predominates over any issues pertaining to individual Grant partners, and given the time and expense of joining each partner individually, a class action is the superior method of resolving the partnership issues once and for all. Swisshelm responds that given all of the questions as to the ESM involvement and partnership tenure, a class action is not the best method to employ in order to resolve these questions.

Pursuant to Rule 23(b)(3), certification is appropriate if common questions of law or fact predominate, and if a class action is superior to all other methods of adjudication. As to common questions, if the same theory of liability is asserted against all class members, and the same basic defenses will be raised by all class members, this requirement is satisfied. *Consumers Power,* 105 F.R.D. at 614; *Grant,* 110 F.R.D. at 535. Here, the theory of liability and the defenses to this theory are identical for all class members, as had already been observed. Indeed, the only significant difference is based on the tenure of differing Grant partners as partners. The division of the class into subclasses would cause this difference to disappear. Therefore, the first half of Rule 23 has been satisfied.

As to the class action device being the superior method of adjudication, this conclusion is clear in light of the above discus-

sions as to numerosity, commonality, and typicality. Without a class action, Harris will spend a great deal of time and money attempting to serve over 300 individuals throughout the country, numerous service-related motions will take up considerable amounts of this court's time, and the important issues in this case could become overshadowed by lesser procedural matters arising out of the presence of over 300 counter-defendants. With a class action, all of the Grant partners will still be present and represented by qualified and informed counsel, the burden on Harris and the court will be significantly less, and maximum attention can be paid to the important issues that are presented. The two requirements of Rule 23(b)(3) have been satisfied.

CONCLUSION

The proposed counter-defendant class satisfies the requirements of Rule 23, and this case will proceed, as to the Grant partners, as a defendant class action lawsuit, and certified under Rule 23(b)(1)(B) and Rule 23(b)(3). However, the court believes that consideration should be given to the development of possible subclasses.

If Grant's potential liability did not exceed the partnership assets, there would be no need for a suit against the individual Grant partners. The only reason suit against this group is necessary is because the liability at issue potentially exceeds the partnership assets, therefore it may be necessary for Harris to seek the assets of individual Grant partners as well. If it is assumed that Grant did engage in fraudulent activities, and that the partners are responsible for this fraud, it is uncertain exactly at what point this fraud commenced. Given the differing tenures as Grant partners of the instant class members, the liability of a given partner may turn on when that individual became, or ceased to be, a Grant partner. As a result, it is not inappropriate to give consideration to subclasses, particularly as there may be a question as to whether a single class member, who was a partner throughout the class period, could adequately represent a member who terminated his/her partnership sometime during the class period, or commenced their partnership at a time after some of the wrongful acts alleged to have occurred took place.

However, the court does not wish to undertake the task of creating subclasses without the input of the parties involved. Consequently, Harris and Swisshelm are to submit to the court, within 30 days of the date of this memorandum opinion and order, suggestions as to the following:

1) How this class could be divided, and they should also submit along with this the names, best known addresses, and dates of tenure as a Grant partner of the members of each proposed subclass;

2) the ways and means of notifying all class members of this action;

3) the ways and means of permitting the class as a whole to decide whether Swisshelm should remain the class representative; and

4) the ways and means of arranging for the respective subclasses, if any are formed, to select subclass representatives.

SO ORDERED.