In re The **APPLIANCE STORE, INC.;** and **Northeast Consumer Technology Stores, Inc., Debtors.**

Kevin **SHAW** and Steve Latzo, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**WHIRLPOOL FINANCIAL CORPORATION; Maytag Financial Corporation; General Electric Capital Corporation, and Joseph P. Nigro, as Trustee in Bankruptcy of The Appliance Store, Inc. and Northeast Consumer Technology Stores, Inc., Defendants.**

Bankruptcy Nos. 92–1573–BM, 92–1574–BM. Adv. No. 93–2093–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 2, 1993.

As Amended Sept. 20, 1993.

Richard A. Finberg, Malakoff, Doyle & Finberg, P.C., Pittsburgh, PA, for plaintiffs.

Eric A. Schaffer, Reed Smith Shaw & McClay, Pittsburgh, PA, for defendant/Whirlpool Financial Corp.

Joel M. Helmrich, Gary P. Hunt, Tucker Arensberg, P.C., Pittsburgh, PA, for defendant/Maytag Financial Corp.

Sheila Smith Dinardo, Katarincic & Salmon, Pittsburgh, PA, for defendant/General Elec. Capital Corp.

James M. Malley, Nigro & Malley, Pittsburgh, PA, for trustee.

Kathleen Robb–Singer, Pittsburgh, PA, Office of U.S. Trustee.

### AMENDED MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiffs Kevin Shaw and Steven Latzo ("representative plaintiffs") have moved, pursuant to FED.R.CIV.P. 23(a) and (b)(3), for class certification of the above-captioned adversary action.[1]

The motion is strenuously opposed by defendants Whirlpool Financial Corporation ("WFC"), Maytag Financial Services Corporation ("MFSC"), and General Electric Capital Corporation ("GECC"). They argue that representative plaintiffs are attempting to bring a class proof of claim, which is impermissible. Alternatively, they argue that none of the requirements for class certification which are set forth at FED.R.CIV.P. 23(a) and (b)(3) has been met in this case.

For the reasons hereinafter stated, the motion for class certification will be granted.

—I—

## FACTS

Debtors were in the retail appliance business. They sold household appliances and electronic goods to consumers through retail stores located in Pennsylvania, Ohio, and West Virginia.

Prior to debtors' filing for bankruptcy, WFC, MFSC, and GECC had financed, on a revolving basis, debtors' purchasing of certain product lines. WFC, MFSC and GECC were granted security interests in inventory purchased with funds they had loaned to debtors.

On April 7, 1992, debtors filed voluntary chapter 11 petitions.

WFC, MFSC, and GECC extended post-petition financing to debtors while they were in chapter 11 which debtors utilized to purchase additional inventory.

A final order was entered on September 24, 1992 approving a financing and security agreement between debtors and WFC. Debtors were authorized to borrow up to $12,000,000.00 from WFC. WFC was granted a first priority security interest in certain defined collateral, which was subject to valid preexisting liens. WFC also was granted a super-priority claim pursuant to 11 U.S.C. § 364(c)(1), with priority over all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) and 507(b). The order also provided that no expenses of administration could be brought pursuant to 11 U.S.C. § 506(c) against WFC's collateral without its prior written consent.

Another final order was entered on October 19, 1992 approving a financing and security agreement between debtors and MFSC. Debtors were authorized to borrow up to $2,000,000.00 from MFSC, which was granted a first priority security interest in certain defined collateral. The remaining terms of the agreement are similar in relevant respects to the terms of debtors' agreement with WFC.

Orders were entered on April 15, 1992, May 6, 1992, and July 16, 1992 authorizing debtors to utilize cash collateral in which GECC had a security interest and authorizing debtors to borrow funds from GECC for the purchasing of additional inventory. GECC was granted a super-priority claim pursuant to 11 U.S.C. § 364(c)(1) with respect to its cash collateral and the funds it advanced post-petition and was granted a waiver under 11 U.S.C. § 506(c). GECC apparently ceased advancing funds to debtors on October 13, 1992.

Debtors remained in business and continued selling merchandise until Christmas

---

**1.** FED.R.CIV.P. 23 applies in adversary proceedings. *See* Federal Rule of Bankruptcy Procedure 7023.

Eve of 1992. On December 28, 1992, the above cases were converted to chapter 7 proceedings and debtors ceased operations.

Approximately one hundred and eighty (180) of debtors' employees were not paid for work performed during the two-week period prior to conversion. The total amount due is estimated at between $330,-000.00 and $400,000.00. The amount owed to individual employees, it is estimated, averages between $1,000.00 and $2,000.00. It is unlikely that funds with which to pay them will be available from estate assets.

A chapter 7 trustee was appointed subsequent to conversion. The trustee has represented to the court that he is holding approximately $2,000,000.00 which was realized from sales of collateral in which WFC, MFSC, and GECC have security interests.

Representative plaintiffs are former employees of debtor The Appliance Store who were not paid for services rendered in December of 1992. Shaw was employed as a salesperson in debtor's store in Washington, Pennsylvania. Latzo was employed as a store manager at the same location.

On February 26, 1993, representative plaintiffs brought the above adversary action on their own behalf "and on behalf of all others similarly situated". They seek to recover from secured creditors WFC, MFSC, and GECC, not from debtors, all amounts due and owing to all former employees for unpaid wages, draws, salaries, commissions, individual or store performance bonuses, and any other employee benefits. Representative plaintiffs maintain that these amounts may be recovered from the above secured creditors' collateral pursuant to 11 U.S.C. § 506(c).

On April 6, 1993, representative plaintiffs moved for class certification. WFC, MFSC, and GECC are opposed to the motion. A hearing on the motion was held on August 16, 1993. All parties were given an opportunity at that time to present any evidence they deemed appropriate.

**2.** A party other than the trustee or debtor-in-possession may have standing to bring an action

—II—

**ANALYSIS**

**A) *Class Proof Of Claim.***

Defendants' first line of argument is that representative plaintiffs are attempting to bring a class proof of claim. According to defendants, a class proof of claim is not permissible.

This argument misconstrues what representative plaintiffs are attempting.

To begin with, there is no consensus concerning the permissibility of a class proof of claim. The United States Court of Appeals for the Third Circuit has not decided this matter. However, at least one bankruptcy court within this district has held that they are not permissible. *See In re Allegheny International, Inc.*, 94 B.R. 877, 878 (Bankr.W.D.Pa.1988).

Those courts of appeals that have ruled on the matter are split. At least one court of appeals has ruled that they are not permissible. *See In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.1987), *cert. denied*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988).

At least two others have ruled that they are permissible. *See Matter of American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988); *also In re Charter Co.*, 876 F.2d 866 (11th Cir.1989), *cert. dismissed*, 496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990).

It is not necessary for this court to determine for itself whether or not a class proof of claim is permissible. Representative plaintiffs in this instance are *not* seeking class certification of a proof of claim. In this instance the propriety of a proof of claim is not being litigated. Their prayer for relief is not directed to debtor or unencumbered estate assets. Rather, they have brought an ***adversary action*** in which they seek to recover directly from the secured creditors and/or the proceeds from the sale of secured assets pursuant to 11 U.S.C. § 506(c).[2]

against a secured creditor pursuant to 11 U.S.C.

Bankruptcy Rule 7023, which adopts FED.R.CIV.P. 23, contemplates that adversary actions *may* be brought as class actions, provided that the requirements of Rule 23 have been satisfied.

### B) *The Requirements Of Rule 23.*

Representative plaintiffs seek to certify the following class:

All former employees of the Debtors The Appliance Store and/or Northeast Consumer Technology Stores, Inc. who were not paid in full for all employment services rendered by them while the Debtors operated under Chapter 11 (including wages, draws, salaries, commissions and individual or store performance bonuses and any other employment benefits due). Excluded from the Class is the former President and Chief Financial Officer of the Debtors, Louis F. Bernucca.

Class certification is sought pursuant to FED.R.CIV.P. 23(a) and (b)(3), respectively, which provide as follows:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ....

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the

§ 506(c). *See In re McKeesport Steel Castings*

prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ The trial court has considerable discretion to grant or deny class certification. If it properly applies the relevant criteria, its decision may be reversed only for abuse of its discretion. *See Weiss v. York Hospital*, 745 F.2d 786, 807 n. 3 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

■ Any error, if one is to be committed, should be committed in a doubtful case in favor of permitting a class action. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

■ A party requesting class certification has the burden of proving that the requirements of Rule 23(a) and (b) have been met. *See In re Mellon Bank Shareholder Litigation*, 120 F.R.D. 35, 36 (W.D.Pa.1988).

In order for the above class to be certified in this case pursuant to Rule 23(a) and (b)(3), representative plaintiffs must demonstrate that the following requirements have been met:

(1) numerosity;

(2) commonality;

(3) typicality;

(4) adequacy of representation;

(5) predominance; and

(6) superiority.

*In re Mellon Bank Shareholder Litigation*, 120 F.R.D. at 37.

Defendants have denied that any of these six requirements has been satisfied in this case.

*Co.*, 799 F.2d 91 (3d Cir.1986).

i) *Numerosity.*

 Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.

Representative plaintiffs seek to certify a class consisting of approximately 180 of debtors' former employees. The absolute number of members of the proposed class alone is not dispositive in deciding the numerosity issue. *See Slanina v. William Penn Parking Corp.*, 106 F.R.D. 419, 423 (W.D.Pa.1984). In order for numerosity to be satisfied, the purported class must be so numerous that joinder of all the members is **impracticable**. *See Weiss*, 745 F.2d at 807–08. In other words, the expediency of joinder and the practicability of multiple lawsuits must be considered. *See In re Mellon Bank Shareholder Litigation*, 120 F.R.D. at 37.

The numerosity requirement has been met in this case. Joinder of an additional 178 plaintiffs (more or less) to the present adversary action would not be expedient, as it would make trial of the matter so unwieldy as to be unmanageable.

The prospect facing the court, in the absence of joinder of all other class members as plaintiffs in this adversary action is no less palatable. While it is not possible to say with certitude how many additional lawsuits might be brought, at least several additional adversary actions by debtors' former employees alleging the same cause of action as is asserted by representative plaintiffs could be expected. It makes little or no sense to hear a multiplicity of lawsuits, all of which assert the same basic cause of action against the same defendants, when a single class action could be tried.

ii) *Commonality.*

 Rule 23(a)(2) requires that questions of law or of fact be common to the class.

This adversary action has been brought pursuant to 11 U.S.C. § 506(c), which provides as follows:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

According to defendants, § 506(c) imposes a heavy burden of proof. In order for a party to recover under this provision, they note, the party must prove: that the costs and the expenses incurred were reasonable, necessary, and beneficial to the secured creditor; that they were incurred primarily for the benefit of the secured creditor; and that the secured creditor benefitted directly. *See In re Hospitality Ltd.*, 86 B.R. 59, 63 (Bankr.W.D.Pa.1988). The most critical element—i.e., proof of benefit to the secured creditor—"must be made on a case-by-case basis". *Id.*

Defendants argue that a class may not be certified in a § 506(c) action because the highly particularized nature of the proof required negates the possibility of there being common issues of fact or law. According to defendants, § 506(c) proscribes class certification *as a matter of law.*

Defendants' assertion that commonality is not present in this case is without merit. There is no *per se* prohibition against certifying a class in an adversary proceeding brought against a secured creditor pursuant to 11 U.S.C. § 506(c). If "commonality" exists among the individual litigants then a class action is appropriate.

This conclusion is not, however, the end of the matter. It remains to be determined whether commonality is present in this case.

Rule 23(a)(2) is disjunctive, not conjunctive. All that is required is that there be common questions of fact *or* of law. Moreover, it is not required that all questions of fact or of law be common to every class member. *See Weiss*, 745 F.2d at 808–09.

The commonality threshold is not high. *See In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3d Cir.1986). Commonality only requires the existence of a common nucleus of operative facts or the existence of common questions of law. *See In re Mellon Bank Shareholder Litigation*, 120 F.R.D. at 37.

In the case at hand there exists a nucleus of operative fact which is common to each member of the proposed class. Each had been employed by debtors during the period in question. Each avers their labor was requested and provided. Each avers they were not paid for services performed by them pertaining to the preservation and/or disposal of collateral in which WFC, MFSC, and GECC had security interests.

There also are questions of law common to each member of the proposed class. E.g., whether the services they allegedly performed were primarily beneficial to one (or another) of the secured creditors; whether language contained in the final orders approving the post-petition financing agreements with WFC, MFSC, and GECC precludes plaintiffs from bringing the present action against them; and whether 11 U.S.C. § 364(e) provides a defense to the present action. These issues of law are illustrative only and are not exhaustive.

### iii) *Typicality.*

■ Rule 23(a)(3) requires that the claims (or defenses) of the representative plaintiffs be typical of those of the class.

Defendants assert that this requirement has not been satisfied in this case. The claims of representative plaintiffs, they insist, are not typical because the jobs they held were "markedly different" from those of many of the other class members.

As has been noted, Kevin Shaw was a salesperson and Steven Latzo was a store manager. In addition to including salespeople and store managers, the proposed class would include employees who performed such varied and diverse tasks as: payroll, inventory control, computer supervisor, controller, bookkeeper, delivery person, accounting, buying, warehouse coordinator, and warehouse supervisor.

Rule 23(a)(3) is "something of an enigma". It overlaps to a considerable extent with the requirements of commonality (Rule 23(a)(2)), adequacy of representation (Rule 23(a)(4)), and predominance and supe-riority (Rule 23(b)(3)). *See Eisenberg,* 766 F.2d at 786.

The performance of a wide variety of tasks by the members of the proposed class is not necessarily fatal to the request for class certification. Typicality does not require identity in this regard. *See Eisenberg,* 766 F.2d at 786.

Rule 23(a)(3) focuses on the legal and/or factual stance(s) assumed by the class representatives as compared with those of the class members. *Weiss,* 745 F.2d at 809 n. 36. The court must assess whether the class representatives themselves present those common issues of law or of fact that merit class certification, thereby assuring adequacy of representation. *Eisenberg,* 766 F.2d at 786.

The specific issue to be addressed with respect to typicality is whether the representative plaintiffs' individual circumstances are markedly different or whether the legal theory upon which their claims are based differs from the legal theory upon which the claims of other class members are based. *Weiss,* 745 F.2d at 809 n. 36.

Rule 23(a)(3) is satisfied if: (1) the claims of the representatives arise from the same event, practice, or course of conduct that gives rise to the claims of other class members; and (2) their claims are based on the same legal theory. *See Grasty v. Amalgamated Clothing and Textile Workers Union, AFL–CIO,* 828 F.2d 123 (3d Cir. 1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988).

Defendants' assertion that the just-noted differences between the jobs performed by representative plaintiffs and by many of the remaining members of the proposed class shows that typicality has not been satisfied is without merit.

Shaw's and Latzo's circumstances are *not* so "markedly different" from those of other class members as to destroy typicality. Their claims arise from the same practice or course of conduct that gives rise to the claims of the remaining class members. They, like other class members, assert that they rendered services as employees of

debtors in disposing of collateral in which defendants had security interests and that their actions collectively benefitted the secured creditors. They are all links in the chain that took possession of the secured property, protected it, delivered it to the stores and sold it. Thereafter, they delivered it to the customer after receiving payment. Their final duty was to pay defendants their due and disburse the profit. Moreover, their claims are based on the same legal theory. They, like other class members, claim that they are entitled to recover from defendants pursuant to 11 U.S.C. § 506(c), to the extent that their actions benefitted WFC, MFSC, and GECC.

#### iv) *Adequacy Of Representation.*

█ Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class.

Adequacy of representation consists of two factors: (1) the representative party's counsel must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the representative party must not have an interest that is antagonistic to that of the class. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied.* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Defendants do not challenge the qualifications of counsel to the representative plaintiffs. They instead assert that representative plaintiffs have interests which are antagonistic to those of other class members.

The liability of any of the secured creditors is limited by Section 506(c) "to the extent of any benefit [to that secured creditor]". According to defendants, it is likely that the amount of any recovery in this case will be insufficient to compensate all members of the class for the full amount of their claims. Representative plaintiffs, they insist, will have an incentive to depict the kinds of jobs they performed as more beneficial to the secured creditors in order to maximize their own recoveries at the expense of certain other class members.

This argument is without merit for several reasons. The premise that the amount of recovery, if any, will be insufficient to compensate all members of the class for the full amount of their respective claims is incorrect. Sufficient funds are available with which to compensate each class member in full. As has been noted, the trustee has stated on the record that he is holding approximately $2,000,000.00 derived from liquidation of collateral in which WFC, MFSC, and GECC have security interests. The total amount of the claims of the members of the proposed class is $400,000.00 or less.

Also, defendants' contention that representative plaintiffs will have an incentive to depict the kinds of jobs they performed as more beneficial to defendants than other kinds of jobs performed by other class members with different job descriptions is unfounded. There is no reason to think that the extent, if any, to which services provided by one class member benefitted secured creditors was any greater (or less) than the extent to which services provided by another class member conferred a benefit.

#### v) *Predominance.*

█ Rule 23(b)(3) requires a finding that common questions of law or fact predominate over individual questions.

Defendants' argument against predominance mirrors their argument against commonality. According to defendants, individual questions predominate over common questions because § 506(c) issues can only be resolved on a case-by-case basis.

Predominance focuses on the efficiency of class treatment, the significance of the common questions, and on the potential distortion of the lawsuit by class certification. *See In re Mellon Bank Shareholder Litigation*, 120 F.R.D. at 38.

As has been noted, the major issues of law and of fact are common to all class members. Included are issues pertaining to: whether class members performed services involving the preservation or disposition of collateral in which WFC, MFSC, and

GECC had a security interest; whether their services primarily benefitted one (or more) of the secured creditors; whether the language of the post-petition financing agreements providing that no action could be brought against WFC, MFSC, or GECC precludes the bringing of this present action; and whether § 364(e) of the Code provides a defense to such an action.

The answers to such common issues "goes to the heart" of the present action and would be decided most efficiently in a class action. Moreover, there is no reason to think that class certification will in any way distort this lawsuit or divert attention from the focal issues in this case.

### vi) *Superiority.*

 Rule 23(b)(3) also requires a finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Defendants insist that a class action would be inferior (not superior) to other procedures available in bankruptcy for resolving this controversy. Their contention is without merit. A class action would be decidedly superior to other procedures available in a bankruptcy context.

This requirement dictates, at a minimum: (1) an informed consideration of alternative available methods of adjudication of the issues; (2) a comparison of fairness to all whose interests may be involved between such alternative procedures and a class action; and (3) a comparison of the efficiencies of adjudication of the various methods. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

The only available alternative for adjudicating the issues raised here is for individual class members to bring adversary actions of their own against the various defendants.[3]

A class action unquestionably is a more efficient means of adjudicating the issues. The alternative—i.e., a large number of adversary complaints brought by one (or more) individual class members on their own behalf—would result in intolerable duplication and resultant waste of scarce resources.

In addition, a class action is fairer than the alternative. Few, if any, of the claims by individual class members exceed $2,000.00. The amount at stake for each individual class member is so small as to discourage them from incurring the expense of bringing an adversary action on their own behalf. This problem does not arise with a class action.

An appropriate order shall be entered.

### ORDER OF COURT

AND NOW at Pittsburgh this 2nd day of September, 1993, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the above adversary action is certified as a class action on behalf of the following class:

All former employees of the Debtors The Appliance Store, Inc. and/or Northeast Consumer Technology Stores, Inc. who were not paid in full for all employment services rendered by them while the Debtors operated under chapter 11 (including wages, draws, salaries, commissions and individual or store performance bonuses and any other employment benefits due). Excluded from the Class is the former President and Chief Financial Officer of the Debtors, Louis F. Bernucca.

IT IS SO **ORDERED.**

---

**3.** Defendants' insistence that a viable alternative is for individual class members to file proofs of claim is misguided. A proof of claim is brought for the purpose of recovering on a claim against the debtor. The present action seeks to recover from WFC, MFSC, and GECC, not from the

bankruptcy estate, to the extent that debtors' employees performed services that conferred a benefit upon WFC, MFSC, and/or GECC. The trustee has been named as a defendant, but only to ensure that he will be bound by the judgment entered.