In re MADISON ASSOCIATES, fka Pannell Kerr Forster, a general partnership, Debtor.

MADISON ASSOCIATES, Official Creditors Committee of the Estate of Madison Associates, and United Jersey Bank and Allstate Municipal Income Opportunities Trusts II and III, on behalf of themselves and others similarly situated, Plaintiffs,

v.

John BALDANTE, et al., (Former Partners of Madison Associates), Marc Abrams, Robert W. Adams, Joseph P. Alam, John A. Andersen, Donald D. Anfinson, Robert A. Ashenden, Scott R. Audrain, Robert L. Awana, Edmund Bailey, M. Barton Baker, Bruce Baltin, C. William Barker, Lucien R. Battiato, Thomas J. Beckett, Wallace L. Behrenz, Bellanca Alfonso C., Thomas J. Beneventi, William A. Benoit, Peggy Berg, Charles Berger, J. Stanley Blumin, L. Clarke Blynn, Gregory T. Bohan, Ralph S. Bowden, John W. Bowman, Raymond E. Brazington, Frank D. Brown, James G. Brown, W. Thomas Brunberg, Scott W. Brush, James E. Burba, Michael C. Burgio, Jr., Michael Burt, James D. Butler, Emmett Cameron, Donald N. Cameron, Jr., John H.D. Campbell, Albert Carreras, Claude Y. Carruth, III, Clarence J. Charlet, Robert W. Ching, Timothy F. Christiana, James A. Cochran, Michael H. Cohn, Frank Compiani, Daniel T. Condon, Richard A. Connor, Jr., Pauline S. Contos, Joseph C. Craig, William J. Crandall, Don I. Criswell, James H. Crofoot, John R. Crow, Ronald L. Cunningham, Sharon Custard, Raymond G. Dane, Kerry S. David, Daryl D. Dekam, John R. Del Pizzo, Richard Delaplane, William H. Denham, Emil Devito, Marie L. Dexter, Thomas P. Dlusky, Thomas P. Donnelly, Galen G. Drake, James R. Duby, Donald M. Edwards, Irwin Ehrlich, Lawrence C. Elmer, Richard B. Engel, Sheldon J. Epstein, Steven L. Erickson, Charles L. Eudy, John Farrington, Raymond E. Faulkner, Joel F. Ferguson, Jaime Figueroa, Geoffrey K. Flynn, John A. Fox, Elwyn F. Freemonth, Kenneth A. Freshman, Michael A. Frigo, Stuart K. Furman, Carey L. Galle' Jr., Robert E. Ganger, Granville R. Gargiulo, Keith Rodric Gastineau, Raymond P. Gaytan, Charles A. Gelman, R. Harold Gibson, James R. Gill, Irwin I. Glick, Harold L. Goldman, Edward N. Goldsberry, Albert J. Gomes, Claude B. Granese, Burton L. Graubart, Eric F. Green, Barclay N. Greene, Patrick W. Greenlee, Peter A. Griffith, Kenneth J. Guidry, Gerard C. Haas, Saul Hammerman, James R. Handley, Daniel C. Hanrahan, II, Howard Y. Harris, Irving L. Heller, Oris A. Hendrickson, Mark Hennelly, Vernon C. Heppner, Laurence Herrup,

James W. Hire, Joel Hiser, Neal A. Hochberg, Hubert D. Hoke, David E. Hoover, George M. Horn, Robert B. Hottman, Melvyn G. Howard, Sanford Howard, James G. Howell, II, Evan B. Hume, R. Paul Ikard, Peter I. Isenberg, Mike Isom, Daniel L. Jackson, Donald M. Jacobs, John P. Jaeger, George B. Janes, Theresa E. Jankowski, D. Roger Jenkins, J. James Jenkins, Paul M. Jinneman, Dwaine C. Johnson, John M. Jorgenson, W. Dean Jurgens, Ronald W. Kaiser, Charles Kaiser, Jr., Raymond F. Kamler, Thomas A. Karnowski, Michael G. Kelstrom, Robert E. Kelton, John T. Kenny, Raymond G. Klinc, Walter R. Knepper, John A. Kopecky, Leroy Koross, Frank L. Kos, Walter S. Koziol, Stephen Kunkel, Emanuel Lauria, Jr., Bruce C. Layer, William H. Leisten, Jr., Joseph M. Lemaire, Lawrence R. Lentini, Timothy J. Leroy, Burton Levy, John S. Lewis, George E. Lipp, Robert B. Lipschultz, James C. Littrell, Donald J. Lofquist, K. Keith Long, John C. Love, Elizabeth D. MacDonald, Stanley H. Malis, Kenneth W. Malloy, Theodore R. Mandigo, John E. Markham, Jr., George J. Marose, James A. Martens, Walter A. Martinez, Donald J. Massagli, Daniel Matter, S. Lee Mayhew, Gary C. McEnelly, David L. McFadden, Edward J. McGinty, Edward J. McGowen, Brian J. McNamara, Michael J. McNamara, James P. Mehen, David R. Merrill, David L. Miller, Max E. Miller, Lawrence I. Morgan, M. Jackson Morris, Joseph H. Mosley, Robert W. Moss, Louie A. Mukai, Jr., Juan R. Natal, Michael H. Nekoba, Edward C. Nickles, III, James E. Nixon, James P. Nolan, Jr., John L. Norman, Ward R. Nyhus, Jr., Stanley J. Olejarski, Robert A. Olsen, Michael J. Orlando, Nicholas C. Ourso, Patrick J. O'meara, John S. Pavlik, John J. Pearl, Joseph M. Peiken, Ronald M. Pendergast, Harold W. Perry, Jr., Robert Y. Perryman, James F. Peters, Jr., Gary S. Petler, Kathleen Petrillo, Charles M. Phillips, Charles G. Pinkowski, Fred Pollard, Graham Pope, William H. Posey, III, Rex Poulsen, Robert E. Powell, Anthony J. Pujia, Randall L. Pullen, Patrick Quek, Warren Quinley, Paul Radosevich, Kevin F. Reilly, A. Gerald Reiss, Robert L. Richards, Allen D. Ritchey, Humberto Roche, Richard J. Roddewig, Clyde T. Rodgers, Jr., Rachel J. Roginsky, Robert R. Romek, Wolfgang O. Rood, Samuel Rosen, Leo J. Rosenberger, Robert L. Rosenblatt, Louis G. Russell, III, Armin E. Ruud, Stanley M. Sapp, Ronald F. Saxe, Donald J. Schmidt, W.B. Scholefield, Thomas J. Schultz, John C. Scott, Charles M. Seidenberg, Alan D. Sered, William A. Seymour, Jared Shlaes, William M. Short, Raymond N. Skaddan, Robert Slanina, James K. Slouber, Christopher E. Smith, Garry W. Smith, Janet M. Smith, Ira Snyder, Jerome P. Solomon, Michael C. Sommers, Michael J. Sommers, John L. Sonnier, Peter F. Spiess, Lewis Page Stalcup, III, D. Roger Stewart, Edward Stone, John T. Straub, Art F. Svoboda, Dudley R. Syler, Michael A. Tannery, Joseph R. Taylor, Suhrid M. Thakore, Michael C. Thompson, N. Gordon Thompson, Harold B. Tiller, James J. Tinney, Francisco F. Torrecillas, Eugene A. Tracy, Kenneth B. Travis, Robert G. Turner, Jr., Angel A. Unzalu, Prentice N. Ursery, Vincent J. Vaccaro, Stanley S. Wachi, Glenn M. Walker, Ronald Watanabe, Ernest A. Watari, Thomas M. Watson, Nathaniel Wechsler, William F. Wernersback, Harvey Wershbale, Alan D. Westheimer, Donald R. White, W. Patrick Whitmore, Richard D. Wickman, Marion F. Wilkins, Arnold F. Wilpon, Leonard R. Wohletz, Jr., Steven J. Wolf, Edward A. Wolff, Jr., Maurice L. Yalman, John A. Yannacone, individuals, Defendants.

Bankruptcy No. LA 93–10002–ES.
Adv. No. LA94–04504ES.

United States Bankruptcy Court,
C.D. California.

May 26, 1995.

Andrew Goodman, Greenberg & Bass, Encino, CA, for debtor Madison Associates.

Andrew Caine, Thomsen Young, Pachulski, Stang, Ziehl & Young, Los Angeles, CA, for Official Committee of Creditors Holding Unsecured Claims, Allstate Mun. Income Opportunities Trusts II and III.

David M. Reeder, Shapiro, Posell, Rosefield & Close, Los Angeles, CA, for Dale L. McCullough, Trustee of Greenville Mortg. Co.

Stephen W. Ragland, Baker, Donelson, Bearman & Caldwell, Memphis, TX, for Robert Awana, Michael Cohn, Paul Jinnemany, John Jorgenson, John T. Straub, Scott Audrain, Stephen P. Kunkel, Charles Pinkowski, William A. Seymour, Loyal W. Behrenz, Leonard R. Wohletz, Joseph Taylor, Art Svoboda, Greg Bohan, Al Gomes and Harold Perry.

Steven J. Brown, Squire, Sanders & Dempsey, Phoenix, AZ, for James Mehen.

## MEMORANDUM OF DECISION RE MOTION FOR AN ORDER CERTIFYING CLASS UNDER RULE 23(b)(1)(B)

ERITHE A. SMITH, Bankruptcy Judge.

This memorandum constitutes the Court's ruling on the Motion for an Order Certifying Class Under Rule 23(b)(1)(B) ("Motion") filed by the Plaintiffs, Madison Associates, the Official Creditors Committee of the Estate of Madison Associates, United Jersey Bank and Allstate Municipal Income Opportunities Trusts II and III in connection with the above-referenced adversary proceeding against certain present and former partners of the Debtor and Debtor-in-Possession, Madison Associates. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(L) and (b)(2)(O).

### I. FACTS

Debtor and Debtor-in-Possession, Madison Associates ("Madison" or "Debtor"), a general partnership, filed a voluntary chapter 11 petition on January 4, 1993. Formerly known as Pannell Kerr Forster[1], Madison was at one time the eleventh largest accounting firm in the United States. Governed by a central national council, the partnership accommodated hundreds of individuals at several levels of involvement, including categories of "Equity (General) Partner", "Senior Principal", "Non–Unit Holding (aka Stipulated Earnings) Partner", "Contract Partner", "Contract Principal", "Senior Partner",

---

1. Pannell Kerr Forster changed its name to Madison Associates in November 1992.

" 'Special' Partner" (collectively, "Partners" or "Defendants").[2]

Madison, like many other businesses, was adversely affected by the recent economic recession which impacted heavily on its clientele. Faced with significant liabilities resulting from malpractice and other litigation, Madison began downsizing its operations in 1989 by closing some of its offices and selling its practices in various cities. The burgeoning litigation and related costs finally compelled Madison to seek bankruptcy protection. As of the date of the filing, the Debtor had completely sold or otherwise shut down its operations.

Since the filing of the chapter 11 case, over 200 claims have been filed against the Debtor's estate totalling nearly $900 million. Of these claims, approximately $518,300,000 represents Partners' claims, of the Debtor, over $200 million consists of professional malpractice claims and the balance is made up breach of contract and other miscellaneous claims. By contrast, the Debtor's assets by recent estimation total between 7,249,000 and $8,352,000.

In light of the size of the estate and the types of claims involved, both an Official Committee of Unsecured Creditors ("Creditors Committee") and Official Partners Committee ("Partners' Committee") were appointed.

As of the date of the hearing on the Motion, the Debtor had filed four versions of its plan of reorganization.[3] The objectives of the Debtor in all four versions have remained substantially consistent. In each, the Debtor seeks to fund a plan of reorganization through the orderly liquidation of the remaining assets of the estate and through cash contributions by the Partners to cover a portion of the deficiency. With respect to the latter, the Debtor has, during the past several months, solicited non-binding contribution pledges from the Partners. Optimistically, the Debtor hopes to raise a total of $9 million in pledges prior to plan confirmation; however by its terms, the plan will become effective upon the achievement of $6.75 million in contributions (or some lesser amount agreed upon by the Debtor and the Creditors Committee). As of October 1994, the Debtor had obtained non-binding pledges totalling some $5.1 million. Through the provisions of two stipulations, the Debtor was able to obtain limited amounts of purported confidential financial information from certain Partners.[4]

In exchange for contributions, the contributing partners (sometimes referred to herein collectively as "Settling Partners"). will be released from any and all liability (whether arising from contribution, indemnity, etc.) relating to any partnership debt or interest. The Debtor believes that such releases are necessary to provide incentive for the Partners to make contributions.[5] The mechanism for releasing the "Settling Partners" has been the subject of much controversy at the hearings on the adequacy of the disclosure statements.

2. The designation of each of these classes as "partners" for purposes of liability has been a matter of considerable controversy in this case. A number of the partners contend that they were never general partners of the Debtor, that their association was only contractual and that they are, therefore, not liable for any of the claims asserted by the Debtor. The Court, through this decision, makes no findings whatsoever with respect to this issue. For purposes of this memorandum and in the interest of simplicity, the term "Partner" or "Partners" refers generically to all 321 of the individuals holding any one of the partner designations noted above during the period commencing July, 1982 through January, 1992, the so-called "liability period" established by the Debtor.

3. Madison filed its first Plan of reorganization on April 4, 1994, its First Amended Plan on June 22,

1994, its Second Amended Plan on August 19, 1994, and its Third Amended Plan on October 18, 1994.

4. The Debtor, in its Third Amended Disclosure Statement, alleges that approximately 93 partners submitted financial information pursuant to an April 1993 Order Approving a Stipulation for Disclosure, with an additional 95 partners submitting less detailed information pursuant to an August 1993 stipulation.

5. In support of the Motion, the Moving Parties have submitted declarations from 179 Partners, all of whom have pledged support for the Motion but have indicated an unwillingness to contribute to the Debtor's plan absent releases of liability.

Under the terms of the Debtor's Third Amended Plan (the "Plan"), Partners refusing to contribute ("Non–Settling Partners") will be subject to legal action by the Debtor or by a representative of the estate authorized under the Plan to recover any deficiency between the total claims on the one hand and the aggregate sum of Partner contributions and amounts realized from the liquidation of the Debtor's assets on the other. Indeed, Non–Settling Partners may be subject to the filing of involuntary bankruptcy petitions against them or other processes geared towards collecting any amounts purportedly owed by them to the Debtor, its creditors, or the Settling Partners.

The Plan contemplates the use of one or more alternative proposals designed to provide incentives for the Partners to contribute, primarily through the consolidation of partnership-related claims and the reduction or elimination of separate collection actions by individual partnership creditors. Indeed, a condition precedent to the confirmation of the Plan is this Court's approval of at least one of the Debtor's incentive schemes. Specifically, the viability of the Plan is contingent upon entry of an order approving one of following proposals:

1. Voluntary settlement agreements between partnership creditors and the Settling Partners whereby such creditors (in a sufficient number to be agreed upon by the Debtor and the Partners Committee) agree to release the Settling Partners. Further, Non–Settling Partners are barred (by order of the Court) from bringing any action against the Settling Partners for indemnity, contribution or reimbursement.

2. Settlement between the Debtor and the Settling Partners of an action to be brought by the Debtor against all Partners for any deficiency owed by the Partners to the Debtor and partnership creditors. It is contemplated that the order approving this settlement will include a finding that the cause of action for the deficiency is property of the Debtor's estate and the settlement therefore bars the claims of all creditors, except the Resolution Trust Corporation ("RTC").[6]

3. Certification of a plaintiff class pursuant to Fed.R.Civ.P. 23(b)(1) or (2) representing all partnership creditors (except the RTC) in a class action brought against the Partners for payment of any deficiency owed to the creditors by the Partners. Under this alternative, it is anticipated that the Debtor will reach a settlement with the Settling Partners and seek an order approving the compromise and barring any further action against the Settling Partners for a deficiency by the Debtor or other partnership creditors (including "Non–Settling Partners").

4. Issuance of a permanent injunction pursuant to 11 U.S.C. § 105 enjoining any person or entity, including the holder of an administrative claim, claim, partnership debt or partnership interest from taking any action to collect payment of any such administrative claim, claim, partnership debt or partnership interest from or against (a) a Settling Partner or any property of a settling partner, or (b) the Debtor.

On or about October 17, 1994 the Debtor and the Creditors' Committee filed a Joint Motion for Order Confirming Authority of Court to Issue Injunctive Relief Pursuant to § 105 ("105 Motion"). The 105 Motion was opposed by a handful of creditors and Partners. Following a hearing, this Court denied the 105 Motion ruling that under the binding authority of the Ninth Circuit's decisions in *American Hardwoods, Inc. v. Deutsche Credit Corp.* (*In re American Hardwoods*), 885 F.2d 621 (9th Cir.1989) and *Underhill v. Royal,* 769 F.2d 1426 (9th Cir.1985), the Court lacked jurisdiction to issue a permanent injunction enjoining actions by non-debtor third parties (creditors of the Debtor) against other non-debtor third parties (partners of the Debtor).[7]

---

**6.** 12 U.S.C. § 1821(j) of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) prohibits a court from enjoining or constraining the RTC in connection with the exercise of its powers under that statute. Accordingly, the Debtor's Plan contemplates the RTC's voluntary execution of a "covenant not to execute upon any judgments or claims against the Debtor and releases in favor of the Settling Partners."

**7.** Although this Court does not necessarily agree with the Ninth Circuit's interpretation of

Following this Court's adverse ruling on the 105 Motion, the Debtor and the Creditors Committee, along with creditors, United Jersey Bank ("UJB") and Allstate Municipal Income Opportunities Trusts II and III ("Allstate") (collectively "Plaintiffs"), in an attempt to salvage the Plan, moved to implement "plan B" by commencing the instant adversary proceeding in November 1994 against the Partners entitled for "Contribution/Recovery of Deficiency from General Partners and Declaratory Relief" ("Complaint"). Among other things, the Complaint alleges:

> "This is an action pursuant to section 544(a) of the Bankruptcy Code and sections 15015 and 15040 of the California Corporations Code (Uniform Partnership Act §§ 15015 and 15040) to recover from each of the Defendants for contribution to cover the deficiency in the Madison estate, which Plaintiffs estimate at in excess of $200 million. The recoveries from this action will become an asset of the Madison estate to be distributed among Plaintiffs and the Class pursuant to the Debtor's Plan of Reorganization...." (Complaint, pp. 3–4)

The Complaint further states that the action is being brought pursuant to Fed. R.Civ.P. 23 ("Rule 23") on behalf of the named plaintiffs and for a "class ... consisting of all persons or entities that are and were creditors of Madison Associates or its predecessor ... as of January 4, 1993", excluding the defendants and the RTC. (Complaint, p. 4) To this end, the Plaintiffs have filed the instant motion seeking class certification.

In support of their position that this adversary proceeding should be tried as a class action, the Plaintiffs contend as follows:

1. The proposed plaintiff class consists of approximately 1,000 creditors located throughout the country. The sheer numbers and scattered location of this group makes joinder impracticable if not impossible;

2. The claims of UJB and Allstate are typical in all material respects of the claims of all members of the class;

3. Plaintiffs, UJB and Allstate are representative parties who will adequately represent the interests of the entire class.

4. The commencement of separate actions by individual members of the class would create a risk of adjudications that would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Moreover, since many of the members of the class have modest claims, it would be impracticable for them to litigate such claims absent the class action.

5. Certification of the proposed class is otherwise appropriate under Rule 23(b)(1)(B).

Not surprisingly, the Plaintiffs have reached tentative settlements with a number of the defendants, i.e., Partners who have pledged to contribute to the Debtor's Plan contingent upon this Court's approval of the proposed class certification. Following class certification, a motion to approve the settlements will be brought to be heard concurrently with the hearing on confirmation of the Debtor's Plan.

A hearing on the Motion was held on December 14, 1994. Pleadings in opposition to the Motion were filed by Dale L. McCullough, Trustee of Greenville Mortgage Co. ("McCullough"), a group of fourteen alleged partners referred to collectively as the "Awana Group" and James Mehen, an individual. On December 21, 1995, this Court rendered its oral ruling granting the Motion and, thus, allowing conditional certification of a plaintiff class pursuant to Rule 23(b)(1)(B).

This memorandum memorializes the findings of fact and conclusions of law upon which the oral ruling was based.

§ 524(e) as a *per se* prohibition against the enjoinment of prosecution against non-debtor third parties in the context of chapter 11 plans of Reorganization, the applicability of that court's decisions in *American Hardwoods* and *Underhill* to the 105 Motion was inescapable. For a thoughtful and detailed analysis of the interplay between § 524(e) and the bankruptcy court's injunctive powers under § 105(a), *see,* Hydee R. Feldstein, *Reinterpreting Bankruptcy Code § 524(e): The Validity of Third–Party Releases in a Plan,* 22 Cal.Bankr.Jr. No. 1 (1994).

## II. DISCUSSION

The principal issues before the Court are whether the binding authority of the Ninth Circuit in *American Hardwoods* precludes certification of a plaintiff class in this adversary proceeding; whether class certification is applicable in bankruptcy adversary proceedings; and whether the requirements for class certification under Rule 23(a) and (b)(1)(B) have been met.

### A. *Impact of American Hardwoods on the Instant Motion*

■ Objecting creditor, McCullough, contends that the relief sought by the Plaintiffs is impermissible under the authority of the Ninth Circuit's decision in *American Hardwoods*. Specifically, McCullough argues that class certification, followed by class settlements that include mutual releases, is the Debtor's "back door" method of obtaining third party injunctive relief prohibited by *American Hardwoods* and previously denied by this Court. Indeed, the Plaintiffs do not dispute that the ultimate goal is to provide a mechanism by which most of the Partners will be motivated to contribute funds to the estate. Their current approach is, to put it mildly, creative and apparently one of first impression in this circuit. McCullough's argument is well-taken but unpersuasive.

This Court previously denied the 105 Motion enjoining all creditors of the Debtor from bringing actions against the Settling Partners. The Bankruptcy Code does not provide specific authority for the issuance of permanent third party injunctions. Authority can only be fashioned from a combination of § 105(a) and relevant case law. Some circuits have sanctioned the use of § 105 for such relief in large cases dependent upon insider plan contributions.[8] However, the Ninth Circuit in the *American Hardwoods* case has specifically held that the use of § 105 to permanently enjoin actions by non-debtors against other non-debtors violates the provisions of § 524(e).[9] Thus, although *American Hardwoods* did not involve a large partnership case, its ruling is nevertheless broad enough to apply to any case involving permanent § 105 injunctions against non-debtors. Accordingly, this Court had no choice but to deny the Debtor's request for a permanent injunction under § 105(a).

The Court believes the current request for class certification pursuant to Rule 23 is not subject to the same legal constraints as the request for permanent injunctive relief under § 105(a), even if the consequences of class certification include settlement agreements that include third party releases. First, the binding class action is a long standing procedural device established in the Federal Rules of Civil Procedure, and incorporated in the Federal Rules of Bankruptcy Procedure with the intention to make the procedure available to the bankruptcy courts. In this regard, Rule 23, which governs class actions, is specifically made applicable in bankruptcy adversary proceedings by Fed.R.Bankr.P. 7023 ("FRBP 7023").

Second, unlike a permanent injunction which would have enjoined creditors from asserting claims against the Debtor's former partners, plaintiff class certification in this

---

**8.** *See, e.g.,* the Second Circuit's decision in *MacArthur Company v. Johns–Manville Corporation (In re Johns–Manville)*, 837 F.2d 89 (2nd Cir. 1988) and the Fourth Circuit's decision in *In re A.H. Robins Co.*, 880 F.2d 694 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989).

**9.** In *American Hardwoods*, the debtor sought to permanently enjoin a creditor's efforts to enforce a state court judgment against jointly and severally liable officers of the debtor, arguing that the pursuit of the creditor's claim would irreparably harm the debtor's efforts to confirm a reorganization plan. In analyzing the interplay between the general powers of § 105 with the specific provisions of § 524(e), the court turned to its earlier decision in *Underhill*. In that case, when faced with a plan supported by creditors which included the release of a non-debtor, the court held the release to be invalid on the ground that

> ... the bankruptcy court has no power to discharge the liabilities of a non-debtor pursuant to the consent of creditors as part of a reorganization plan. The broad language of § 524(e), limiting the scope of a discharge so that it 'does not affect the liability of any other entity,' encompasses this result. 769 F.2d at 1432.

Based upon its ruling in *Underhill*, the court in *American Hardwoods* concluded that the specific provision of 524(c) displaced the court's general equitable powers under § 105(a) to grant permanent injunctive relief to non-debtors.

**214**

case will permit, at least theoretically, the claims of creditors to be collectively advanced against the Debtor's former partners.

Third, none of the objecting parties have brought to the attention of the Court any case law, and the Court is unaware of any such case law, holding that Rule 23 is *per se* inapplicable to plaintiff's class certification in adversary proceedings initiated against non-debtors. Furthermore, if this Court has the authority under FRBP 7023 to certify a class, then, logically, it should also have the authority to approve any settlements related to such a class action.

Finally, the primary claim asserted against the Partners by the proposed class, i.e., the recovery of partner contributions to cover the partnership estate's deficiency, is a claim (and therefore, an estate asset) that could be asserted solely by the Debtor. The litigation of individual creditor claims against the Partners would undoubtedly adversely impact upon the Debtor's pursuit of its own claim against the Partners on behalf of the estate. Accordingly, the Court believes that it has jurisdiction both over the claim, as well as any settlements or compromises related to a claim. Admittedly, any subsequent settlements between the plaintiff class and defendant partners will no doubt include releases which will have the ultimate effect of a permanent injunction with respect to the Settling Partners. However, if the class is properly certified and approval of subsequent settlements is properly obtained, the injunctive aspect of such settlements between the settling parties would not, in this Court's view, be violative of § 524(e).

For the foregoing reasons, the Court finds that class certification pursuant to Rule 23 is not precluded by the Ninth Circuit's rulings in either *American Hardwoods* or *Underhill.*

**B. Applicability of Class Certification to Adversary Proceedings in Bankruptcy**

■ As stated, FRBP 7023 specifically incorporates F. Rule 23 which governs class actions. Although not a common practice, there is precedent in the case law for certification of class actions in bankruptcy cases. *See, e.g., In re Appliance Store, Inc.,* 158 B.R. 384, 386 (Bankr.W.D.Pa.1993) (class of debtor's former employees certified in action against debtor's secured creditors); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992) (certification of class of former students affirmed). *See also In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 292–293 (2nd Cir.1992) (class certification essential to successful reorganization); *Benchic v. Century Entertainment Corp.,* 25 B.R. 502, 505 (Bankr.S.D.Ohio 1982) (class action proper in bankruptcy case where class bears some direct effect on the case and the viability of the debtor's plan).

**C. Requirements for Class Certification**

In order for an action to be certified as a class action, the moving parties must satisfy the four threshold requirements of Rule 23(a) as well as the requirements of at least one of the subdivisions of Rule 23(b) for maintenance of the class action.[10]

The four requirements of Rule 23(a) and (b) are commonly referred to in abbreviated fashion as (1) numerosity, (2) commonality, (3) typicality and (4) adequate representation. Once the requirements of Rule 23(a) have been met, the moving parties must demonstrate that the class action can be

**10.** Rule 23(a) provides:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Rule 23(b)(1)(B) provides in pertinent part:
(b) Class Actions Maintainable. An Action may be maintained as a class action if the pre-requisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of

. . . . .

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; . . . .

maintained pursuant to one of the provisions of Rule 23(b). In this case, the Plaintiffs seek to maintain the class pursuant to the non-opt out provision of Rule 23(b)(1)(B). As set forth below, this Court finds that the requirements of Rule 23(a) and (b) have been met in this case.

### 1. *Numerosity*

■ As noted hereinabove, the Debtor's schedules include approximately 1,000 creditors. Plaintiffs contend that the joinder of all such creditors would be impracticable if not impossible, particularly in light of the fact that the creditors reside in several different states. Creditor McCullough counters that the size of the creditor pool alone is not sufficient to satisfy Rule 23(a)(1) and that the Plaintiffs must also satisfy the impracticability standard. Furthermore, McCullough argues, impracticability cannot be shown because all of the members of the proposed class are creditors of the Debtor and, as such, are subject to the jurisdiction of the bankruptcy court anyway. Stated otherwise, all of the proposed class members have already been "joined" since the date the bankruptcy petition was filed.

This Court finds that the joinder of some 1,000 creditors located throughout the country would indeed be impracticable. Indeed, the numerosity requirement has been found to have been satisfied in cases involving substantially fewer potential class members. *In re Appliance Store,* 158 B.R. 384 (Bankr. W.D.Pa.1993) (180 class members); *In re Alexander Grant & Co. Litigation,* 110 F.R.D. 528 (S.D.Fla.1986) (over 300 class members); *In re Activision Securities Litigation,* 621 F.Supp. 415 (N.D.Cal.1985) (150 class members) While creditors of the Debtor may arguably be "joined" for purposes of claim administration, the Court rejects the argument that such parties are necessarily joined for all purposes, including the commencement of litigation against non-debtor third parties. Simply put, the Court finds that the joinder of over 1,000 plaintiffs would be unduly burdensome for the Debtor as well as for the Court and, thus, is impracticable. The numerosity requirement has been satisfied.

### 2. *Commonality*

■ Rule 23(a)(2) requires that there exists a common nucleus of operative facts or the existence of common questions of law. Here, common questions of partnership law govern and are dispositive of the claims of the Plaintiffs and each proposed class member against the Defendants. Indeed, each such class member holds a claim that constitutes a portion of the deficiency in the estate, and gives rise to the Debtor's claims against the Defendants.[11]

The primary issue between the Plaintiffs and the Defendants is the responsibility of each of the Defendants under general partnership law for his or her share of the deficiency. This is not to say that the Defendants are all liable for the same amounts or under the same theory of liability. However, this is not required in order to satisfy this requirement for certification, particularly where, as here, the common question is based upon the joint and several liability of individual partners under general principles of partnership law.

---

11. Certain of the objecting Partners argued at the hearing on the Motion that a debtor-in-possession does not have standing to bring a deficiency action against its general partners—that the right to recover against general partners for deficiency is limited under the Bankruptcy Code to the chapter 7 trustee under § 723. § 723(a) provides:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter involving a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

While there is no equivalent provision applicable to Chapter 11 cases, the Debtor is certainly not precluded from proceeding pursuant to § 544 to recover the estate's deficiency under applicable state partnership law. *See, In re Litchfield Co. of South Carolina Ltd.* 135 B.R. 797, 802, 803–804 (W.D.N.C.1992) (Under South Carolina partnership law, a partnership may compel contributions from its partners to pay its debts; debtor-partnership's prepetition property interest in contributions of partners necessary for payment of all liabilities, passes to estate and may be enforced by debtor to the extent of any deficiency of debtor's property to satisfy claims of creditors).

Arguments similar to those raised by the objecting parties, i.e., uniqueness of claims and defenses, have been considered and rejected by a number of courts. *See, e.g., Alexander Grant & Co. v. McAlister,* 116 F.R.D. 583, 587 (S.D.Ohio 1987); *Northwestern National Bank of Minneapolis v. Fox & Company,* 102 F.R.D. 507, 511 (S.D.N.Y. 1984). In *Alexander Grant,* despite argument by an objecting prospective class defendant that all class members would not be liable under the same theory of liability, the court ruled that claims against all class members need not be identical, but rather there must be a single issue which is common to all class members—the primary theory of liability common to all class defendants being that by operation of partnership law they were all liable for the acts of various of the partnership's employees. Similarly, in *In re Alexander Grant & Co. Litigation,* 110 F.R.D. at 534, in finding that the commonality requirement was satisfied due to common questions of partnership liability, the court rejected the argument that individual claims predominated because of the necessity for assessing damages based upon a partner's tenure, noting that "once liability and the relevant dates are established, assignment of damages becomes a ministerial task." *See also, In re Appliance Store, Inc.,* 158 B.R. at 389 (Rule 23(a)(2) does not require that all questions of fact or of law be common to every class member. It only requires the existence of a common nucleus of operative facts or the existence of common questions of law); and *Rosario v. Livaditis,* 963 F.2d at 1017 (The fact that there was some factual variation among students suing a beauty college for alleged misrepresentations, based on varying length of the students' exposure to the program, did not prevent the students from satisfying the commonality requirement for class certification.)

Also unpersuasive is an argument by one of the opposing parties relating to conflict of laws. As stated, the class claims in this case are for deficiency based on the liability of general partners for partnership debt. That general partners are liable for partnership debt is a principal common to the laws of all forty-nine of the fifty states that have adopted the Uniform Partnership Act.[12] This court finds that the requirement of commonality has been sufficiently demonstrated.

### 3. *Typicality*

■■■ The requirement of Rule 23(a)(3) that the representative parties be typical of the class is closely related to the question of commonality. Typicality is generally found to exist where the named plaintiff's claims arise from the same events that give rise to the claims of the other class members and the claims are based on the same legal theory. *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3rd Cir.1992); *In re Seagate Technology II Securities Litigation,* 843 F.Supp. 1341, 1346 (N.D.Cal.1994). Typicality exists if the class claims are "sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *California Rural Legal Assistance v. Legal Services Corp.,* 917 F.2d 1171, 1175 (9th Cir.1990).

In this case, the "typical" class claims are based upon professional negligence/malpractice and breach of contract. Plaintiffs Allstate and UJB, assert claims based upon these same theories. Perhaps more importantly, it is evident that the estimated claims of the class—in excess of $200 million—far exceed both the current assets of the estate as well as the estimated maximum amount recoverable from the Partners. Stated otherwise, there is a very limited source of funds from which all creditors will be able to recover. That being the case, the Plaintiffs have every incentive to obtain the maximum recovery for the estate.

The Awana Group objects to a finding of typicality on the ground that each claim has an allegedly distinct legal and factual basis. As noted in the discussion above regarding commonality, the courts in *Alexander Grant* and *Fox* considered potential partner defenses based on different tenures and questions of fact and held, nevertheless, that since general partnership law imposes joint and

12. Louisiana is the only state that has not adopted the Uniform Partnership Act. *See, Alexander Grant & Co. Litigation,* 110 F.R.D. at 534;

Westlaw Uniform Laws Annotated, Uniform Partnership Act 1914 Act, *Table of Jurisdictions Wherein Act has been Adopted* (1994).

several liability upon all individuals who were partners during the applicable period, the individual defenses to liability will be substantially similar and typical. *Alexander Grant*, 116 F.R.D. at 587; *Grant & Co.*, 110 F.R.D. at 534–535; *Fox*, at 513. Typicality has been adequately established.

### 4. *Adequacy of Representation*

■■■ Under Rule 23(a)(4), the representative parties must fairly and adequately represent the interests of the proposed class. More specifically, this subsection requires that the interests of the named plaintiffs be "co-extensive with and not antagonistic to, the interests of the class, and that the named plaintiff and thus the class, be represented by qualified and experienced counsel." *Perez–Funez v. District Director, I.N.S.*, 611 F.Supp. 990, 997 (C.D.Cal.1984) (Citations omitted). Absent contrary evidence from the party opposing class certification, adequacy of representation is generally presumed. *See Hohmann v. Packard Instrument Co.*, 399 F.2d 711, 714 (7th Cir.1968); *Perez–Funez*, 611 F.Supp. at 998 n. 19. Based upon the evidence presented in this case, it does not appear that the class representatives have interests that are antagonistic to members of the putative class. Further, as evident from the foregoing discussion of the commonality and typicality requirements, the Plaintiffs have established to this Court's satisfaction that the claims of the class representatives are substantially similar to the claims of the class and that the Plaintiffs are capable of adequately representing the interests of the proposed class.

Accordingly, this Court finds that the Plaintiffs have met all of the requirements of Rule 23(a) for the certification of the proposed class.

### 5. *Maintenance of Class Action under Rule 23(b)(1)(B)*

■■■ Rule 23(b)(1)(B) permits maintenance of a class action if the prosecution of separate actions by creditors would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. *McDonnell Douglas Corporation v. United States Dist. Court for Central Dist. of California*, 523 F.2d 1083 (9th Cir.1975); *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461 (9th Cir.1973). Stated otherwise, an action under this subdivision is appropriate when the individual actions would as a practical matter impair or impede the rights of class members not before the court. This would include the situation where claims are made against a particular fund that is insufficient to satisfy all such claims, i.e., the so-called "limited fund action." *Advisory Committee Note to 1966 Amendments of Fed. R.Civ.P. 23*, 39 F.R.D. 98, 100–102 (1966). *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2nd Cir.1992); *In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *Alexander Grant*, 116 F.R.D. at 591; *Grant & Co.*, 116 F.R.D. at 587.

The standard for maintenance of a class action under Rule 23(b) is perhaps higher in the Ninth Circuit than in other circuits. *La Mar*, 489 F.2d at 467 ("... [R]estrictions on the flexible language of the Rule 23 are a necessary contribution to the effort to avoid the intractable problems of massive class actions and to maintain a wholesome degree of difference between the judicial and administrative functions").[13] Indeed, in *Green v.*

---

**13.** *See* the Fourth Circuit's critical and disapproving analysis in *In re A.H. Robins*, 880 F.2d at 729 of the Ninth Circuit's apparent application of a "strict scrutiny" standard for class certification in *La Mar*:

　... [D]espite the clear mandate in the first Section of the Rules that such Rules '[should] be construed to secure the just, speedy, and inexpensive determination of every action,' some courts decided to depart from this liberal construction of Rule 23 and to adopt a standard of construction of the basis of the standard of 'strict scrutiny.' (Citation omitted). The reason for this departure from the liberal and flexible construction of Rule 23 and for the adoption of the 'strict scrutiny' standard was stated in *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461, 468 (9th Cir.1973). In that case, the Court based its strict construction of the Rule on its 'belief that restric-

*Occidental Petroleum Corp.,* 541 F.2d 1335 (9th Cir.1976), the Court reiterated its position in *La Mar* and went so far as to hold that suits for damages were ordinarily not appropriate for class action certification under Rule 23(b)(1)(A) or (b)(1)(B). 541 F.2d at 1340. However, and significantly for the case at bar, the court in *Green* observed:

> It is conceivable of course, that the claims of named plaintiffs would be so large that if the action were to proceed as an individual action the decision 'would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.' Fed.R.Civ.P. 23(b)(1)(B). **This would be the case where the claims of all plaintiffs exceeded the assets of the defendant and hence to allow any group of individuals to be fully compensated would impair the rights of those not in court.** (Citing 3B Moore's Federal Practice, P. 23.35(2) (1975). This action does not present this problem. (emphasis added)

*Id.*

Thus, strict scrutiny standards notwithstanding, the Ninth Circuit is apparently willing to recognize the applicability of Rule 23(b)(1)(B) to limited fund actions such as the one presented here.

Indeed, favorable rulings in individual actions would result in judgments against the Partners that would necessarily deplete the limited pool of partner assets to the detriment of other class members, including the Debtor. This Court finds that certification of the proposed plaintiff class in this case may be maintained under Rule 23(b)(1)(B).[14]

### III. CONCLUSION

For all the reasons states above, the proposed plaintiff class is hereby conditionally certified pursuant to Rule 23(a) and (b)(1)(B) pending confirmation of the Debtor's Plan.

tions on the flexible language of Rule 23 [was] a necessary contribution to the effort to avoid the intractable problems of massive class actions....'

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7052. A separate order shall be submitted forthwith.

14. Although not specifically addressed herein, this Court summarily rejects the Awana Group's assertion that the Court lacks subject matter jurisdiction over this action.